197 So. 566

**SHREVEPORT LONG LEAF LUMBER CO., Inc., v. WILSON et al.**

**No. 35816.**

June 28, 1940.

Rehearing Denied July 18, 1940.

Hunter & Hunter, of Shreveport, Kennon & Kitchens, of Minden, and Wilkinson, Lewis, Wilkinson & Naff, of Shreveport, for plaintiff-appellant.

Campbell & Campbell, of Minden, for defendant-appellee.

ODOM, Justice.

By written contract dated December 11, 1937, Oscar Wilson, one of the defendants, employed Fred E. Terry, a contractor, to build for him a two-story brick building on Lots 13 and 14 of Block 1 in the Town of Springhill, Webster Parish, Louisiana. Terry, the contractor, agreed to furnish all material and labor and to do all things necessary for the proper construction and completion of the work for a consideration of $10,000.

Wilson, the owner, did not record this contract, nor did he require that Terry, the contractor, furnish bond or other security for the faithful performance of the contract, as required by Section 2, Act 298 of 1926. Terry, the contractor, erected the building according to the terms of the contract and purchased certain materials from the Shreveport Long Leaf Lumber Co., Inc., the plaintiff in this suit.

On June 2, 1938, the plaintiff filed for record in the office of the clerk of court and recorder of mortgages in the Parish of Webster, where the building is located, an itemized statement of materials furnished to Terry, showing a balance due by Terry for said materials of $3,625.13, the statement being accompanied by an affidavit of plaintiff's representative that said amount was justly due and owing. The

itemized statement, together with the affidavit, was recorded in the mortgage records on June 8, 1938, in accordance with the provisions of Section 12, Act 298 of 1926.

Section 12 of that act provides that, when the owner undertakes the work of construction, improvement, or repair of any building, when no contract has been entered into or when a contract has been entered into but has not been recorded, then any person furnishing services or material or performing any labor on the building or other work "may record in the office of the Clerk of Court or Recorder of Mortgages in the parish in which said work is being done or has been done a copy of his estimate or an affidavit of his claim or any other writing evidencing same, which recordation, if done within sixty days after the date of the last delivery of all material upon said property or the last performance of all services or labor upon the same, by said furnisher of material or said laborer, shall create a lien and privilege upon the building or other structure and upon the land upon which it is situated, in favor of" such laborer or furnisher of material.

It is conceded that the plaintiff complied literally with the provisions of this section of the statute, and that a lien was created in its favor as a result of the recordation.

On September 14, 1938, plaintiff brought this suit in the district court of the Parish of Webster against Oscar Wilson, the owner, and Fred E. Terry, the contractor, to recover judgment in solido against them for the balance due as shown by the recorded statement and affidavit. The plaintiff al-

leged that Oscar Wilson, the owner, is a non-resident of the state and asked that a curator ad hoc be appointed to represent him in the proceeding. Plaintiff did not pray for personal judgment against the defendant Wilson, but reserved its right to proceed against him for a personal judgment. This suit against Wilson, the owner, is therefore one in rem to have recognized and enforced the plaintiff's lien and privilege against Wilson's property.

Terry, the contractor, and the curator ad hoc appointed to represent Wilson, the owner, filed certain exceptions which need not be discussed, after which they answered, denying generally plaintiff's allegations.

The case was tried on its merits on April 5-6, 1939, and submitted on June 28, on briefs to be filed. The case was taken under advisement, and no further steps were taken until October 20, 1939, when the curator ad hoc for Wilson, the owner, moved to reopen the case and thereupon filed the following plea:

"1. That the original statement, affidavit and lien, which form the basis of this suit, were filed on June 7, 1938; that same has not been renewed or reinscribed, as required by law, within the time and manner required by law, and that more than one year has elapsed since the original filing of said statement, affidavit and lien, all of which will more fully appear from the certificate of Clerk of Court and ex-Officio recorder of mortgages filed herewith and made a part hereof.

"2. That said affidavit, lien and privilege, and the cause of action thereon and

therefor, is now lost, extinguished and become barred by the prescription of one year, which prescription is hereby specially pled.

"3. That said affidavit, lien and privilege, and the cause of action therefor, has now perempted, prescribed, and become extinguished by the peremption of one year, which peremption is hereby specially pled."

Terry, the contractor, made no defense, and judgment was rendered against him as prayed for. The plea of prescription and peremption filed by the curator ad hoc for Wilson, the owner, was sustained, and plaintiff's suit as to Wilson was dismissed and its demand for recognition and enforcement of the lien and privilege was rejected at plaintiff's cost. Plaintiff appealed.

The plaintiff filed its lien under, and in accordance with the provisions of, Section 12, Act 298 of 1926, which was in effect at that time. But that section of the act was amended and reenacted by Act 323, page 805, of 1938, which act was approved by the Governor on July 6 and went into effect 21 days thereafter.

Plaintiff filed its suit to have its lien and privilege recognized and enforced on September 14, 1938, which was about 45 days after the amending statute went into effect.

If the original act is applicable to this case, plaintiff's lien is not prescribed. But, if the amending act is applicable, the lien is prescribed, and the judgment appealed from is correct.

Section 12 of the 1926 act, after reciting that the recordation of the statement of materials furnished or labor performed, with the supporting affidavit, shall create a lien and privilege upon the building and other structure and upon the land on which it is situated, in favor of persons who have performed services or labor or delivered materials in connection with such work of improvement, goes on to provide that: "Said lien and privilege, recorded as aforesaid, shall constitute a lien and privilege, against the said property for a period of one year from the date of its filing, *unless interrupted by judicial proceeding, during which judicial proceeding said prescription shall not run*."

The corresponding clause in the 1938 act reads as follows: "Said lien and privilege, recorded as aforesaid, shall constitute a lien and privilege against the said property for a period of one year from the date of its filing, *and may be enforced by a civil action in any Court of competent jurisdiction in the parish in which the land is situated and such right of action shall prescribe within one year from the date of the recordation of the privilege in the office of the Recorder of Mortgages; and the effect of the registry ceases, even against the owner of the property or the property itself, if the inscription has not been renewed within one year from the date of the recordation*."

The 1926 act provides also that any person furnishing services or material or performing any labor on the building or other work to or for a contractor or subcontrac-

tor, when a contract, oral or written, has been entered into but no contract has been timely recorded, "shall have a personal right of action against the owner for the amount of his claim for a period of one year from the filing of his claim, as provided in this Section, *which right of action shall not prescribe during the pendency of judicial proceedings.*"

The corresponding provision in the 1938 act reads as follows: "shall have a personal right of action against the owner for the amount of his claim for a period of one year from the filing of his claim, as provided in this Section, which right of action shall not prescribe *within one year of the date of its recordation, or the reinscription thereof.*"

Section 12 of the original act and the same section as amended are identical, word for word, except as indicated by the phrases and clauses which we have italicized above.

The lien and privilege created by, or resulting from, the filing and recordation of the claim in the mortgage records exists against the property owner "for a period of one year from the date of its filing", unless it is kept alive for a longer period by the method prescribed by the statute. In other words, the lien prescribes in one year. But the running of prescription may be interrupted. Under the statute as originally adopted, prescription was "interrupted by judicial proceeding, during which judicial proceeding said prescription shall not run". Under the statute as amended and reenacted, the method of keeping the lien alive beyond the

period of one year is to renew or reinscribe it in the mortgage records within one year from the date of its original recordation; or, to quote the language of the statute, "and the effect of the registry ceases, even against the owner of the property or the property itself, if the inscription has not been renewed within one year from the date of the recordation."

If the 1926 act is applicable, the lien is not prescribed for the reason that plaintiff filed its suit to enforce the lien on September 14, 1938, about three and a half months after the lien was filed; and, according to that statute, the filing of a suit interrupted prescription, and prescription does not run during judicial proceeding. But if the amending act applies, then the lien is prescribed because it was not renewed or reinscribed within one year, as required by that act.

Counsel for plaintiff insist most earnestly that the statute of 1926 applies for the reason that it was in effect at the time the lien was created by the recordation of the claim. The curator ad hoc for Wilson, the defendant, insists with equal sincerity that the amending act of 1938 applies.

We hold that the 1938 act is applicable for the reason that, in so far as it amends Section 12 of the 1926 act, it is remedial in its nature. That part of Section 12 of the original statute which was amended by the 1938 act relates exclusively to the method of prolonging the life of the lien beyond the period of one year, or the method of interrupting prescription. That part of the original statute which conferred upon laborers and material men

substantive rights was not changed in the slightest by the amending act, but was re-enacted to read word for word like the original.

■ The manifest purpose of the amendment was to substitute a new and different method of procedure for inter-rupting or suspending the running of pre-scription against the lien. That is what it did and all it did. A comparison of the amending act with the original makes this too clear for argument.

■ The general rule is that statutes should be construed to operate prospective-ly unless the words employed show a clear intent that they should have a retroactive effect. The language of Act 323 of 1938 does not indicate a clear intent that it should act retrospectively. Counsel for plaintiff say that its language clearly in-dicates that the Legislature intended that it operate prospectively only, because the word "hereafter" appears in the enacting clause of the statute. That clause reads as follows: "Be it enacted by the Legis-lature of Louisiana, That Section 12 of Act 298 of 1926 be, and the same is, amend-ed and re-enacted so as to read hereafter as follows."

■ The word "hereafter" does not ap-pear in the body of the act. That word's appearing in the enacting clause as it does really means nothing. The result of the amendment, even without the word "here-after", would be that the act would read thereafter as amended. If the word "here-after" had been inserted in the first sen-tence of the body of the act so as to make it read "Hereafter when the owner, or his·

authorized agent, undertakes the work of construction", etc., there would be no doubt that the Legislature intended the act to have prospective effect only. In the case of Geddes & Moss Undertaking & Em-balming Co. v. First National Life Ins. Co., 189 La. 891, 181 So. 436, the statute con-sidered (Act 160 of 1934) provided in the first sentence of the body of the act "That hereafter before any corporation, associa-tion or organization shall issue any poli-cy", etc., and the court held that the use of the word "hereafter" clearly indicated that the Legislature intended that the act should have prospective effect only.

Act 323 of 1938, which amends Section 12 of Act 298 of 1926, relates exclusively to the remedy for the interruption of pre-scription or the remedy for keeping the lien and privilege alive beyond the statutory period of one year. That remedy under the original act was to file suit. The reme-dy under the act as amended is to rein-scribe the lien.

■ The general rule from which there seems to be no dissent is that, where a statute deals with procedure only, it applies to all actions, to those which have accrued or are pending as well as to future actions. This rule is subject to the qualification that such a statute is void or inapplicable if its operation will necessarily result in the impairing of contracts or the dives-titure of vested property rights. Such statutes operate retrospectively and do not fall within the general rule that statutes must be construed as prospective in their operation unless the language used plainly shows a contrary intent. Paulsen v. Rei-

necke, 181 La. 917, 160 So. 629, 97 A.L.R. 1184; Landry v. Grace, 167 La. 1042, 120 So. 770; Whittington v. Payne, 151 La. 595, 92 So. 128; Cassard v. Tracy, 52 La. Ann. 835, 27 So. 368, 49 L.R.A. 272; Dunning v. West, 51 La.Ann. 618, 25 So. 306. See also Amendatory Acts, 59 C.J., Section 719, page 1181.

"Statutes relating to procedure or legal remedies are undoubtedly within the general rule against retrospective construction where the effect of giving them a retroactive operation will be to impair the obligation of contracts or to disturb vested rights. But the rule does not prevent the application of statutes to proceedings pending at the time of their enactment where they neither create new, nor take away vested, rights. When a new statute deals with procedure only, prima facie, it applies to all actions—those which have accrued or are pending and future actions." 25 R.C.L., Section 38, page 791.

Counsel for plaintiff advance the argument that, if Act 323 of 1938 be so construed as to give it retrospective effect, it would be unconstitutional, being in violation of Section 15, Article IV, of the State Constitution, which provides that no ex post facto law, "nor any law impairing the obligation of contracts, shall be passed; nor shall vested rights be divested, unless for purposes of public utility", etc.

The amending statute leaves untouched and unimpaired the substantive rights which plaintiff acquired under the original act. It does not go beyond, and give a different legal effect to, the lien and privilege which came into existence under the original statute. It does not affect transactions which occurred before it became operative. It took away from plaintiff none of the inherent benefits of its lien. The vested rights acquired under the act of 1926 were left undisturbed.

Section 12 of the 1926 act outlines in detail a method by which laborers and material men could protect their rights in cases where those rights were not protected otherwise by the statute. They could, by following the method outlined by the statute, bring into existence a lien and privilege in their favor on the property of the owner of the works to secure the unpaid balance due them. The liens, so acquired under Section 12 of the original statute, were vested rights, as that term is used in the statute, and could not be divested by any subsequent legislation. The amending act does not disturb vested rights acquired under the original act.

The only change made by the amending act related to the remedy for keeping the lien alive for a period exceeding one year. Counsel for plaintiff seem to think that the remedy provided in the original act for interrupting prescription by judicial proceeding was a vested right which could not be divested. But the settled rule is against this theory.

In State v. Standard Oil Co., 188 La. 978, 178 So. 601, 611, we quoted approvingly the following extracts from 12 C.J., Sections 558 and 559, pages 974 and 975: "There is no vested right to a particular remedy. A statute is not unconstitutional, therefore, merely because it changes, abolishes, or impairs an existing remedy for a cause of ac-

tion that has accrued prior to the passage of the statute. * * * And so acts providing a new remedy, or enlarging a remedy already existing, or repealing an exemption from liability in a particular form of remedy, although made to operate retrospectively, do not, per se, impair vested rights."

In support of that ruling we cited cases too numerous to be listed here.

█ The change made by the act of 1938 in the method of keeping liens alive could not possibly affect injuriously the substantial rights of this plaintiff. All plaintiff had to do to prolong the life of its lien and privilege was to have the lien reinscribed in the mortgage records, which is a convenient, simple, and inexpensive process. This, plaintiff failed to do, and its lien is lost.

The amending statute went into effect about August 1, 1938, and plaintiff had from then until about June 1, 1939,—a period of nine months—to protect its rights under the new act. Therefore the amendment imposed no hardship or injustice upon plaintiff.

We cannot lend sanction to the view expressed by counsel for plaintiff that, as between the parties themselves, the effect of recording the lien does not cease at the end of one year under the provisions of the new act. They concede that the "effect" of the recordation ceases in one year if the lien is not reinscribed in so far as third parties are concerned.

The plain language of the act, however, precludes such construction. It says: "and the effect of the registry ceases, *even against the owner of the property or the property itself,* if the inscription has not been renewed within one year from the date of the recordation." (Italics ours.)

█ If the phrase "even against the owner of the property or the property itself" had been left out, there might be room for counsel's argument. But apparently the lawmakers anticipated that the clause relating to the effect of registry might be construed to mean that the effect ceased only as to third parties, and for that reason purposely included the phrase, set off by commas, "even against the owner of the property or the property itself", in order to remove all doubt as to what the general clause means. Our interpretation of the general clause relating to the effect of registry is that, if the lien is not reinscribed within one year, it ceases to exist and thereafter affects no one, not even the owner of the property.

Counsel argue that it is the effect of the registry, and not the lien itself, which ceases at the expiration of one year, and they call attention to the numerous cases decided by this court holding that conventional mortgages do not prescribe as between the parties to them so long as the debt secured by them is kept alive. The most recent case touching this point, where previous cases are cited and reviewed, is Hite et al. v. Charbonnet, 193 La. 581, 192 So. 64. Counsel say that the same rule should be applied to the case at bar.

We do not think so. In the Hite case, the court was speaking of conventional

mortgages which are "acquired only by consent of the parties" (Revised Civil Code, Article 3342).

The lien involved in the case at bar was not acquired "by consent of the parties". It was "created" by special statute. It affected defendant's property, not because defendant consented to the lien, but because the statute imposed the burden upon his property without his consent for a specified period of time. In conventional mortgages the mortgagor voluntarily encumbers his property for an indefinite length of time. As between him and the mortgagee, his property is encumbered as long as the debt which the mortgage secured is kept alive. That is an inevitable consequence of the contract entered into. Individuals cannot abrogate their contracts at will.

But this rule has no application to liens created by special statute, where the statute itself limits the life of the lien to a specified term and sets forth the circumstances under which it shall become extinct. The plaintiff here had its lien on defendant's property, not because the defendant consented to it, but because the law gave it. What the law gives the law can take away.

We do not think that the articles of the Civil Code and the decisions of this court relating to the effect of registry of conventional mortgages have any application to the effect of registry of liens created by the act of 1926, as amended, which act is a special statute relating exclusively to building contracts. Under that act, the effect of registry and the duration of its effect are stated in language too plain and clear to be misunderstood.

The trial judge held that plaintiff's lien was prescribed, and dismissed its suit. Counsel say that, even if it be true that plaintiff's lien is prescribed, its suit should not have been dismissed. The judge did not err in dismissing the suit. The suit was an in rem action. It has subserved its only purpose, which was to have the lien recognized and enforced. The lien having passed out of existence, the suit can serve no further purpose whatsoever. Plaintiff did not sue to obtain a personal judgment against Wilson, the non-resident owner of the property, but especially reserved its right to proceed against him for such judgment.

For the reasons assigned, the judgment is affirmed, plaintiff to pay costs.