12 So.2d 204

### STATE v. ALDEN MILLS.
#### No. 36791.

Jan. 12, 1943.

Rehearing Denied Feb. 1, 1943.

James C. Henriques, of New Orleans, for relator.

James B. Smullin, Stephen B. Rodi, and Joseph F. Deynoodt, all of New Orleans, for respondent.

Charles J. Rivet, of New Orleans, for intervenors.

O'NIELL, Chief Justice.

This is a summary proceeding to collect additional corporation franchise taxes for the years 1933, 1934, 1935, 1936 and 1937. The suit was filed on December 8, 1941. The amount claimed, with the 20% statutory penalty and 10% attorneys' fees, is $1,961.82. It is admitted in the plaintiff's affidavit on which the suit is founded that the defendant paid the tax for each of the five years mentioned, amounting to $3,666.28, but it is claimed that the amount of the tax for those years should have been $5,152.41, and hence that the amounts paid left a shortage of $1,486.13, to which is added the statutory penalty and attorneys' fees.

The defendant, answering the rule to show cause why judgment should not be given for the amount claimed, denied that there was any balance due, and at the same time pleaded that the suit was barred by the prescription of three years under the provision in Section 19 of Article XIX of the Constitution "that all taxes and licenses, other than real property taxes, shall prescribe in three years from the 31st day of December in [of] the year in which such taxes or licenses are due." The Judge of the Civil District Court maintained the

plea of prescription and dismissed the suit, but the Court of Appeal reversed the judgment, overruled the plea of prescription, and remanded the case. State v. Alden Mills, 8 So.2d 98. The defendant obtained a writ of review.

The constitutional provision on which the plea of prescription is founded was added as a proviso to Section 19 of Article XIX of the Constitution and was adopted as a constitutional amendment· in the congressional election held on November 8, 1938, pursuant to Act 35 of 1938, thus: "and provided, further, that all taxes and licenses, other than real property taxes, shall prescribe in three years from the 31st day of December in the year in which such taxes or licenses are due."

The Governor issued his proclamation on November 19, 1938, proclaiming that the amendment had been adopted. According to Section 1 of Article XXI of the Constitution the amendment became a part of the Constitution, effective twenty days after the issuance of the Governor's proclamation. The twentieth day after the 19th day of November is the 9th day of December. There might be some doubt whether the constitutional amendment became effective on that day or on the 10th day of December, 1938, if the question were at issue, but, as that is a matter of no importance in this case, we take it that the amendment became effective on the 10th day of December, 1938, as far as it had the effect of barring suits to collect license taxes which were due in or before the year which ended on December 31, 1934. But, as to the license taxes which became due

in the year ending on December 31, 1935, the plea of prescription provided for in the constitutional amendment did not become available until January 1, 1939. According to the decision rendered by the Court of Appeal the constitutional amendment did not become effective as a bar to a suit to collect back taxes—no matter how long past-due—until the 10th day of December, 1941. That is to say, a suit to collect taxes which were past due for any number of years was not barred by prescription until the end of three years after the date on which the constitutional amendment became effective; that is, until December 10, 1941.

The attorneys for the plaintiff rely upon the general rule of statutory construction, stated in Article 8 of the Civil Code, that a law can prescribe only for the future, that it can have no retrospective operation, or impair the obligation of a contract. That rule, obviously, has no application to a case where the State adopts a statute of limitation against suits, to recover debts which otherwise would be due to the State. The constitutional objection to the impairing of the obligations of contracts, or the divesting of vested rights, has no application to a statute by which the State bars by prescription an action to recover an indebtedness which otherwise might be due to the State. The attorneys for the plaintiff rely also upon the rule that every reasonable doubt as to the intent of the law-maker is resolved against rather than in favor of the retroactive operation of a statute. But that rule has no application to this case because to give this constitutional amendment the effect of barring by prescription all stale claims for back taxes which were past due more than three years when the amendment became effective, on December 10, 1938, does not give the amendment a retroactive effect. What the plaintiff is contending for is not really that the constitutional amendment shall not have a retroactive effect; the contention really is that the effect of the amendment was suspended for three years after December 10, 1938,—the date on which, according to Section 1 of Article XXI of the Constitution, the amendment became effective. To hold that the amendment had the effect on December 10, 1938, of barring suits for license taxes that were then more than three years past due, would not be giving the amendment a retroactive effect. The Supreme Court of the United States expressed such an opinion in the case of Reynolds v. United States, 292 U. S. 443, 54 S.Ct. 800, 803, 78 L.Ed. 1353, thus:

"A statute is not rendered retroactive merely because the facts or requisites upon which its subsequent action depends, or some of them, are drawn from a time antecedent to the enactment."

The suit of Reynolds v. United States was brought in the Court of Claims by an honorably-discharged veteran of the Spanish-American War, to recover from the United States money deducted from his pension fund on account of board furnished to him while he was an inmate of a government hospital in which he was entitled to hospitalization under an act of Congress, section 202(10) of the World War Veterans' Act of 1924, as amended, 38 U.S.C.A. § 484. He was committed to the

hospital as an insane person on June 19, 1911, and remained there until April 25, 1930. During that period there was placed to his credit on the books of the hospital, under the certificate of the Bureau of Pensions the sum of $4,036, representing funds paid to the institution by the Bureau of Pensions for the relief of Reynolds. On his discharge the hospital deducted from his pension fund the sum of $3,259.17 on account of board furnished during the period of his confinement in the institution. On July 2, 1926, 44 Stat. 794, an amendment to the World War Veterans' Act was adopted, declaring that the pension of a veteran entitled to hospitalization should not be subject to deduction by a government hospital, for board, maintenance, or any other purpose incident to hospitalization. The government contended that the pension funds placed to the credit of Reynolds were subject to deduction for his board during the period of hospitalization, and particularly "for board furnished prior to July 2, 1926, when the proviso first came into effect", exempting such funds from any such deduction. In rejecting the contention the court said:

"The final contention of the government is that, in any event, petitioner is not entitled to recover so much of the funds withheld by the hospital as equal the charges for board furnished prior to July 2, 1926, when the proviso first came into effect, since to allow him to do so, it is said, would be to give the proviso a retroactive operation contrary to the intention of Congress. * * *

"But in no aspect of the matter would the allowance of that portion of the amount sued for which was applicable to board furnished prior to July 2, 1926, cause the proviso to operate retroactively. A statute is not rendered retroactive merely because the facts or requisites upon which its subsequent action depends, or some of them, are drawn from a time antecedent to the enactment. Cox v. Hart, 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332 [337], and cases cited."

In Cox v. Hart [260 U.S. 427, 43 S.Ct. 157, 67 L.Ed. 332], it was said:

"A statute is not made retroactive merely because it draws upon antecedent facts for its operation."

That principle was recognized by this court in the case of Hurry v. Hurry, 141 La. 954, 76 So. 160, where the court construed Act 269 of 1916, which allowed either party to a marriage to obtain a divorce "when married persons have been living separate and apart for a period of seven years or more". It was held that it was not necessary that the seven years of separation should commence after the statute went into effect, in order to avoid giving the statute a retroactive effect.

It is argued by the attorneys for the plaintiff that the word "shall", in the declaration that "all taxes and licenses, other than real property taxes, shall prescribe in three years from the 31st day of December in the year in which such taxes or licenses are due", shows the intention that the plea of prescription was not to be available in any suit filed within three years after the amendment would go into effect, —that is, within the three years commencing on December 10, 1938, and ending on

December 10, 1941. Our opinion however is that the word "shall" in the phrase "shall prescribe in three years" does not indicate an intention that the plea of prescription was not to be available immediately after the constitutional amendment would go into effect, on December 10, 1938, as a defense to a suit filed on or after that date, for license taxes then more than three years past due. The word "shall" meant that the prescription would be available at any time after the amendment would go into effect, under Section 1 of Article XXI of the Constitution. The word "are", in the phrase "three years from the 31st day of December in the year in which such taxes or licenses are due", does not indicate whether the intention was that the plea of prescription would be available immediately when the amendment would go into effect, on December 10, 1938, or would not be available within three years after that date. If the framers of the amendment had intended that the plea of prescription should apply only to taxes becoming due after the amendment would go into effect, they would have used some such phrase as "shall become due". If the framers of the amendment had used the past tense, "became due", instead of "are due", it might be argued that the amendment was not applicable to taxes coming due subsequent to the date on which the amendment would become effective,—December 10, 1938. The phrase "are due" was used advisedly, to make the amendment applicable to taxes which would be already three years or. more past due when the amendment would go into effect, on December 10, 1938, as well as to taxes which would become due after that date. There is therefore in the wording of this amendment nothing which indicates an intention that the plea of prescription should be unavailing until the lapse of three years from the date of the amendment's becoming "effective" under Section 1 of Article XXI of the Constitution.

When we consider that this constitutional amendment, adopted in pursuance of Act 35 of 1938, could not possibly impair the obligation of a contract, or affect any vested right except rights of the State herself, there is no reason why we should not apply the general rule of construction announced in De Armas v. De Armas, 3 La.Ann. 526, in 1848,—and affirmed only two years ago in Shreveport Long Leaf Lumber Co. v. Wilson, 195 La. 814, 197 So. 566,—thus:

"Laws of prescription, and those limiting the time within which actions may be brought, are retrospective in their operation."

But, of all of the rules of statutory construction, the one which is most appropriate to this case is the so-called universal rule, stated in article 18 of the Civil Code, thus:

"The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it."

The cause which induced the Legislature to enact ·the joint resolution, Act 35 of 1938, proposing to amend the Consti-

tution so as to put an end to the bringing of suits on stale claims for back taxes alleged to be more than three years past-due, was the disclosure in the case of State v. Standard Oil Co., 188 La. 978, loc.cit. 1034–1037, 178 So. 601, loc.cit. 619, 620, that, by certain changes made in the adoption of the Constitution of 1921, the prescription by which, under Act 148 of 1906, suits to collect delinquent license taxes were barred after the lapse of three years,—and which theretofore was applicable as well to license taxes on the occupation of severing natural resources as to license taxes on other occupations,—became inapplicable to the severance tax imposed upon natural resources under authority of the Constitution of 1921. The result of that finding was that the defendant in that case alone was condemned to pay additional taxes, or back taxes, amounting to $72,591.51 and penalties amounting to $70,323.51, or a total sum of $142,915.02, covering a period of eight years, in which these additional taxes had not been demanded. That case was decided on November 2, 1937, and the petition of the defendant for a rehearing was denied on January 10, 1938. At the same time there was pending in this court a suit against the Standard Oil Company for additional taxes on the sales of gasoline during the period from January 4, 1929, to September 30, 1937. The amount claimed in that case was $566,804.28, plus $113,360.85 for the 20% statutory penalty, and $68,016.51 attorneys' fees, or a total sum of $748,181.64; and, if the decision had gone against the defendant in that case, other dealers might have been subjected thereby to similar charges and penalties,

amounting to an enormous sum of money. The State's demand in that case was rejected on the doctrine of contemporaneous construction, because the tax had been paid according to the interpretation put upon the gasoline tax statute by the Supervisor of Public Accounts during the eight years for which the additional taxes were sued for. See State v. Standard Oil Co., 190 La. 338, 82 So. 531. The case was decided on May 30, 1938, and the petition for a rehearing was denied on June 27, 1938. The regular session of the Legislature for that year convened on May 9th and adjourned on July 7, 1938. Act 35 of that session, proposing the constitutional amendment which we are now considering, was introduced, as House Bill No. 50, on May 10, 1938, only 20 days before the second of the two Standard Oil Company Cases was decided by this court. The amendment received an unanimous vote on all roll-calls, in both Houses of the Legislature. All of which tends to show that the proposal of the Legislature to amend the Constitution so as to provide for the prescription of stale claims for back taxes, or additional taxes, was made in response to a popular demand. There is no good reason why the Legislature should have intended that the proposed plea of prescription of three years should not become available until three years would have elapsed after the proposed law would go into effect under the provisions of the Constitution. There was no reason for the Legislature to intend that the plea of prescription should not be available against stale claims for back taxes, or additional taxes, alleged to be already more than three years past-due,

as well as against claims for taxes which would not become due until the proposed law on the subject would become effective under the terms of the Constitution. On the contrary, it was more important to give the taxpayers protection against having to produce their books, records, receipts and vouchers which were already more than three years old, than it was to warn them to preserve such documents and records for a period of three years after the new law— providing for the three years' period of prescription or limitation—would become effective under the terms of the Constitution. In this connection we must remember that the procedure by which the State undertakes to collect back taxes, or additional taxes, is not only summary but also very harsh. According to Act 14 of the Second Extra Session of 1935, the mere filing of an affidavit in court, by the officer charged with the duty of collecting the tax, or by one of his deputies or assistants or attorneys, stating that the facts on which he claims the tax, interest, penalties and attorneys' fees are true to the best of his knowledge or belief, must be accepted by the court as prima facie true, and as constituting a prima facie case, "and the burden of proof to establish anything to the contrary shall rest wholly on the defendant or opposing party." § 4. All defenses, whether by exception or to the merits, made or intended to be made, to any such claim, must be presented at one time and filed in the court of original jurisdiction prior to the time fixed for the hearing, and no court shall consider any defense unless so presented and filed. And the courts are forbidden to extend the time for pleading

any defense, or to grant a continuance except for some legal ground set forth in the Code of Practice. Act 10 of the First Extra Session of 1935, levying the corporation franchise tax, required all corporations to furnish annual reports to the Secretary of State, and to hold their books and records subject at all times to inspection by him. By Act 163 of 1942 (which act was amended in some respects by Act 12 of the Extra Session of that year) the authority and duties of the Secretary of State with regard to the collection of the corporation franchise tax were transferred to the Collector of Revenue. But, among the provisions in Act 10 of the First Extra Session of 1935, the one which, above all, made it important to protect the corporations by a statute of limitation against claims for back taxes or additional taxes was the provision in subsection (3) of section 7 declaring that the only legal evidence that the tax had been paid was the appropriate form of receipt issued by the Secretary of State signed either by him or by his duly authorized representative. That provision in subsection (3) of section 7 of Act 10 of the Extra Session of 1935 was omitted from Act 163 of 1942, which amended the statute by transferring to the Collector of Revenue the authority and duties concerning the collection of the corporation franchise taxes; and the same omission seems to have been made in the amendment of the statute in some respects by Act 12 of the Extra Session of 1942.

The most convincing proof that the Legislature, in providing this law of prescription or limitation of three years against the right of the State to claim back

taxes, or additional taxes, did not intend that the period of prescription should not include any time preceding the going into effect of the new law is the fact that the law was proposed and adopted as an amendment of the Constitution, instead of being enacted merely as an act of the Legislature. The procedure required for adopting an amendment of the Constitution is cumbersome and expensive. According to Section 1 of Article XXI of the Constitution, every proposed amendment must be published twice in a local newspaper in each and every parish in which a newspaper is published; and, as there is now and was in 1938 at least one newspaper published in each and every parish in the state, it was necessary to publish Act 35 of 1938 twice in sixty-four newspapers. The Legislature could have avoided this trouble and expense of amending the Constitution, by enacting an ordinary statute of limitation, if the intention had been that the period of prescription should not include any time that would have elapsed at the time when the law would go into effect according to the terms of the Constitution. But the Legislature was forbidden by the provisions of Section 13 of Article IV of the Constitution to release or extinguish, in whole or in part, any indebtedness, liability or obligation of any corporation or individual to the State. That restriction upon the authority of the Legislature was made in article 59 of the Constitution of 1898 and of the Constitution of 1913. For that reason, in the Succession of Popp, 146 La. 464, 83 So. 765, 26 A.L.R. 1446, in 1920, it was held that a statute reducing the rate of the inheritance tax

was unconstitutional so far as it purported to reduce taxes already due to the State. There is therefore no reason to doubt that the purpose which the Legislature had in mind, in proposing a constitutional amendment, instead of enacting an ordinary statute of limitation, was to include in the period of prescription time which would have gone by at the time when the new law would go into effect.

The adopting of this law of prescription by way of a constitutional amendment allowed the tax collecting authorities ample time, between the date of the introduction of the bill proposing the amendment, May 10, 1938, and the date on which the amendment went into effect, December 10, 1938, to save for the state—by suing for—all back taxes or additional taxes which were already more than three years past-due.

The attorneys for the plaintiff cite and rely upon four cases, namely, Succession of Parham, 51 La.Ann. 980, 25 So. 947, 26 So. 700; Etchison Drilling Co. v. Flournoy, 131 La. 442, 59 So. 867; Mayer v. Gros, 116 F.2d 733, where the United States Circuit Court of Appeals for the Fifth Circuit affirmed the decision by a Judge of the United States District Court for the Western District of Louisiana, reported in International Shoe Co. v. Picard & Geismar, 30 F.Supp. 570, loc. cit. 579; and State v. Spence & Goldstein, Inc., La. App., 6 So.2d 102. None of these decisions is controlling in the present case. In the Succession of Parham the public administrator, in 1898, brought a summary proceeding against the tax collector to show cause why the tax assessments for the

years 1872 to 1876, inclusive, and 1881 to 1896, inclusive, in the name of William Parham, who had died in 1865, should not be declared null because they were made against a deceased person, and why, for the same reason, the inscriptions of the tax liens should not be cancelled. Subsequently the public administrator pleaded the prescription of three and five years against "all taxes and tax inscriptions for the years 1890 to 1895, inclusive" [51 La.Ann. 980, 25 So. 948] under the provisions of certain tax statutes. Thereafter, and while the suit was pending, the Constitution of 1898 was adopted, in article 186 of which was an amendment and re-enactment of article 176 of the Constitution of 1879. Under article 186 of the new Constitution the public administrator pleaded that the tax liens against the property were prescribed or perempted by the lapse of three years from the 31st day of December of each year in which the taxes were levied. The article contained the provisions which were retained in section 19 of article XIX of the Constitution of 1921 before it was amended pursuant to Act 35 of 1938. In article 176 of the Constitution of 1879 the proviso was this: "Provided, such privileges [referring specifically to privileges securing the payment of taxes] shall lapse in three years." In article 186 of the Constitution of 1898 the proviso was changed so as to read as follows: "Provided, such tax liens, mortgages, and privileges, shall lapse in three years from the 31st day of December, in the year in which the taxes are levied, and whether now or hereafter recorded." The contention of the public administrator

was that by the substitution of the proviso in article 186 of the Constitution of 1898 for the proviso which had appeared in article 176 of the Constitution of 1879 "the framers of the constitution [of 1898] intended to release all property from their operation and effect in any and all years preceding its adoption." The court of course rejected the contention, saying: "We are most certainly unwilling to adopt such an interpretation as that, unless our judgment is clearly convinced that the words of the constitution imperatively require such a construction at our hands". And the court added this sufficient reason for rejecting the contention:

"The view we have expressed as to the intention of the constitution is confirmed by the fourth paragraph of article 325 (schedule) to the effect that 'all fines, taxes, penalties, forfeitures and rights due, owing or accruing to the state of Louisiana, or to any parish, city, municipality, board, or other public corporation therein, under the constitution and laws heretofore in force, * * * shall continue and remain unaffected by the adoption of this constitution.' "

In the opinion rendered in the Succession of Parham is a dissertation on the subject of the distinction between retrospective and prospective laws, which seems to have been misleading. But the expressions on that subject were not the basis for the decision which was rendered, and were not at all pertinent to the decision. That fact was disclosed in the opinion written by the author of the original opinion and given as the reason for the refusal to grant a rehearing,—thus:

"This case was tried in the lower court exclusively upon the theory that the taxes and tax inscriptions under consideration had been remitted by the terms of the 186th article of the constitution of 1898, and, in the lower court, that theory was sustained; and the tax collector appealed. That was the only question argued at bar, or in briefs by counsel on either side; and therefore it was the only question that could be tried and decided there".

It is plain therefore that the decision in the Succession of Parham went no further than to declare that the change in article 186 of the Constitution of 1898, of the wording of the proviso in article 176 of the Constitution of 1879, did not have the effect of remitting any taxes that were due to the state at the time of the adoption of the Constitution of 1898.

In the case of Etchison Drilling Co. v. Flournoy, the court decided merely that Act 196 of 1910, levying an annual license tax upon the business of severing minerals from the soil, was unconstitutional because it violated the provision in article 229 of the Constitution of 1898 forbidding the Legislature to levy a license tax upon those engaged in mining pursuits. By a joint resolution, Act 154 of 1910, the Legislature proposed an amendment of article 229 of the Constitution of 1898 so as to permit a license tax to be levied upon the occupation of severing natural resources from the soil but the amendment of course did not go into effect until after the November election in 1910; hence it was held that, as the Act 196 of 1910 was unconstitutional when enacted, it did not become valid by virtue of the constitutional amendment which became effective afterwards. That decision is cited by the attorneys for the plaintiff in the present case merely as authority for the general rule that a constitutional amendment has only a prospective and not a retrospective effect unless the wording shows plainly the intention that it shall have a retrospective effect. We have pointed out that the difference between a retrospective and a prospective effect of a statute or constitutional amendment is a matter of no importance in the present case.

The decision rendered in Mayer v. Gros, 5 Cir., 116 F.2d 733, loc. cit. 736, affirming the decision of the district judge reported in International Shoe Co. v. Picard & Geismar, 30 F.Supp. 570, loc. cit. 579, was based upon no other authority than the decision in the Succession of Parham, 51 La.Ann. 980, 25 So. 947, 26 So. 700, and the decision rendered in Etchison Drilling Co. v. Flournoy, 131 La. 442, 59 So. 867. As there was no federal question in the case of Mayer v. Gros, the decision is not controlling in this court. On the contrary, the federal court merely applied what the court believed to be the purport of the two decisions cited, which had been rendered by this court, and which in fact did not justify the holding in Mayer v. Gros [116 F.2d 736] "that the prescriptive period provided for [in the constitutional amendment of 1938] is only applicable to taxes falling due after December 8, 1938, the day the amendment became effective."

The decision in State v. Spence & Goldstein, Inc., being that of one of the courts

of appeal, is of course not controlling. The decision would be persuasive, but for the fact that it was founded upon the idea that to hold that the constitutional amendment of 1938 went into effect on the 10th of December, 1938, would give it a retrospective effect,—and but for the fact also that the case was abandoned by the parties litigant without applying for a writ of review or even for a rehearing. The reason for the abandonment of the case was that the judgment of the district court was amended by the court of appeal so as to make it merely a money judgment against a nonexistent corporation. The district judge allowed a tax lien on the property which the defunct corporation, Spence & Goldstein, Inc., had disposed of; but the court of appeal amended the judgment by sustaining a plea of prescription, or peremption, of the tax lien, which amendment had the effect of making the judgment against the nonexistent corporation utterly worthless. When the judgment was amended the holders of the property which had formerly belonged to the corporation had no further interest in the case; the defunct corporation itself of course had no interest in the case; and the State, acquiescing in the amendment by which the plea of prescription or peremption of the tax lien was maintained, had no interest in the money judgment against the nonexistent corporation. It is disclosed in the opinion rendered in that case, 6 So.2d 103, that the defendant, Spence & Goldstein, Inc., was liquidated "long ago", that the liquidator had filed with the Secretary of State more than five years before the judgment was rendered "proper evidence" of

the fact that the liquidation had been completed and that all of the assets of the corporation had been disposed of, "and, therefore, its corporate existence had ceased." The amending of the judgment appealed from, by sustaining the plea of prescription or peremption of the tax lien, made the opinion which was rendered in the case merely an academic discussion of the subject.

We find therefore, from our analysis of the cases cited, no precedent in the jurisprudence to justify overruling the plea of prescription in this case.

This suit was filed originally by the Secretary of State, under authority of Act 10 of the First Extra Session of 1935, and was prosecuted in his name through the civil district court and the court of appeal, but when the case was called for argument in the supreme court the Collector of Revenue appeared and obtained an order making him the party plaintiff, under authority of Act 12 of the Extra Session of 1942, amending the statute as theretofore amended by Act 163 of 1942. The attorneys for the Collector of Revenue contend that the day on which the suit was filed—which was the 8th day of December 1941—was the last day—or was the day next to the last day—before the claim otherwise would have become barred by the prescription of three years—even for the additional taxes claimed for the year 1933. But our opinion is that the claim for the additional taxes for the years 1933 and 1934 became barred by the prescription of three years on the day on which this constitutional amendment became effective—which was

the 9th or 10th day of December 1938,— and that the claims for additional taxes for the years 1935, 1936 and 1937 became barred by the prescription of three years at the end of December 1938, 1939 and 1940, respectively.

The judgment of the court of appeal is annulled and the judgment of the civil district court, maintaining the plea of prescription and dismissing the suit, is affirmed.

ROGERS, J., absent.

HAMITER, J., takes no part.