**UNITED STATES v. NEBO OIL CO., Inc.**

No. 13460.

United States Court of Appeals
Fifth Circuit.

Aug. 4, 1951.

John F. Cotter, Atty., Dept. of Justice, Washington, D. C., A. Devitt Vanech, Asst. Atty. Gen., Sol B. Pressburg, Spl. Atty., Alexandria, La., William J. Fleniken, Asst. U. S. Atty., Shreveport, La. and Edmund B. Clark, Washington, D. C., for appellant.

John W. O'Boyle, James D. Heldt, John C. Jacobs, all of Dallas, Tex., Malcolm L. Monroe, J. Blanc Monroe, New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and STRUM, Circuit Judges.

BORAH, Circuit Judge.

This suit was brought by the appellant, United States of America, against the appellee, Nebo Oil Company, Inc., for a judgment declaring that appellant is the owner of the minerals, including oil, gas and sulphur, underlying approximately eight hundred acres of land located in the Parish of Natchitoches, State of Louisiana. A trial was had by the court without a jury and judgment was entered dismissing the complaint. This appeal followed.

The undisputed facts are these: In the year 1932 five lumber companies decided to pool the mineral rights in their lands in order to secure more favorable exploration and development thereof, it being agreed by the parties that each would share in any production obtained from the pooled acreage in proportion to the acreage which each lumber company contributed to the pool. For that purpose, the Good Pine Oil Company was organized and the lumber companies individually conveyed to it all of the oil, gas and sulphur underlying their lands.

One of these conveyances to Good Pine Oil was by recorded deed from the Bodcaw Lumber Company, dated November 12, 1932, covering all of the oil, gas and sulphur underlying a tract of land containing 37,532.13 acres of which the 800 acres of land here involved was a part. This deed recited that the minerals were conveyed to Good Pine Oil, its successors and assigns, forever; and that it was intended to confer upon the vendee absolutely and without limit for time of their enjoyment any and every right, title and interest which the vendor had in the minerals conveyed.[1]

Prior to the year 1936 the United States was interested in purchasing lands in Louisiana for national forest purposes and had found that owners of large tracts of land were unwilling to sell their lands because of court decisions holding that the sale or reservation of mineral rights in Louisiana created only a right in the nature of a servitude which was subject to prescription by ten years nonuser. However, the United States Department of Agriculture, Forest Service, was not in accord with this view and on May 29, 1935, submitted to Bodcaw Lumber Company an opinion of the Assistant Solicitor of the Department of Agriculture to the effect that the prescriptive provisions of the Louisiana Civil Code would not apply to lands sold to the United States for national forest purposes.

Thereafter, on February 11, 1936, Bodcaw sold to the United States a tract of timber land containing 24,943.93 acres, of

1. The deed also recited that " * * * none of said rights in any of said lands shall be prescribed unless there shall elapse a full period of ten (10) years in which there shall be no exercise of any of the foregoing rights or user of any of the lands aforesaid under and by virtue hereof."

which the 800 acre tract whose minerals had previously been conveyed to Good Pine Oil formed a part. These lands were purchased by appellant for inclusion in the Kisatchie National Forest and were specifically conveyed to 'it "subject to the sale of all the oil, gas and sulphur in, on, and under all of the lands conveyed herein, as shown by act of sale dated November 12, 1932, * * * wherein Bodcaw Lumber Company of Louisiana, Incorporated, was the vendor, and Good Pine Oil Company, Incorporated, was the vendee." This deed recites that "the mention of these mineral sales and of the rights granted therein is made solely for the purpose of limiting. vendor's warranty to the United States of America in the present sale, and the recital of the said mineral sales shall in no wise extend or enlarge the same in point of time, or limit, control, or otherwise restrict the manner of exercising its rights by the Good Pine Oil Company, Incorporated, its successors and assigns."[2]

At the time the sale was made, the officers and directors of Bodcaw believed that the mineral rights in the lands sold were valuable and the price of $1.75 per acre paid by appellant for the timber lands acquired under the 1936 deed did not reflect the value of any mineral rights. Moreover, the uncontradicted testimony is that Bodcaw would not have sold the timber lands to the United States had its representatives then taken the position, as they do now, that the prescriptive provisions of the Louisiana Civil Code would be applicable to the lands sold.

In December 1941 the Good Pine Oil Company was dissolved and the mineral interests which it had acquired were transferred to its stockholders in indivision. Thereafter the appellee, Nebo Oil Company, was organized and by mesne conveyances acquired all of the mineral rights formerly held by Good Pine Oil.

It was stipulated by and between the parties that no drilling operations have been conducted on the 800 acres of land here involved or on lands contiguous thereto. However, it appears that the mineral rights acquired by Good Pine Oil by virtue of the 1932 deed from Bodcaw were exercised by the drilling of five separate wells between October 1941 and October 1948, three of which were located on lands conveyed to the United States under the 1936 deed from Bodcaw. It further appears that there has been considerable drilling activity on other portions of the pooled acreage and substantial production has been developed and oil and gas is now being obtained therefrom. Additionally, each of the five lumber companies, in accordance with the pooling agreement, has shared in this production obtained from the pooled acreage in proportion to the acreage which each contributed to the pool.

The gravamen of the complaint is that no drilling operations were conducted on the lands in suit during the ten year period beginning November 12, 1932; and that consequently any mineral rights owned by Good Pine Oil or its successor, Nebo Oil, had prescribed by ten years of nonuser of the servitude. For answer, Nebo Oil denied that the mineral rights had prescribed and set up the defenses, among others, that there had been an interruption of the ten year prescriptive period for the reason that the minerals underlying the 800 acre tract were pooled with other minerals which had been developed, and exercise of the servitude on any part of the pooled acreage interrupted prescription with respect to all of the minerals included in the pool; and that the mineral rights were imprescriptible by virtue of Act 315 of the Louisiana Legislature of 1940. The trial judge sustained these defenses and this appeal followed.

Insisting that the judgment should be reversed, appellant contends that the court erred: (1) in holding that the mineral rights in question were included in a pooling agreement which was binding on the appellant though unrecorded, and that production under that agreement interrupted prescription; and (2) in concluding that Louisiana Act 315 of 1940 is valid and

2. The deed also contained an attempt by the grantor to reserve in itself all the minerals for a period of ten years after the expiration of Good Pine's servitude.

constitutional as applied to lands conveyed to the United States prior to the effective date of its enactment.

In Louisiana there is no land tenure other than perfect ownership and imperfect ownership and there is no separate corporeal mineral estate in oil and gas as such. The Louisiana courts have adhered to the principle that a reservation or sale of oil and gas creates only a right to go upon the land to search for and capture minerals. This right to reduce the substance to possession, although not fitting perfectly into any civil code category, is in the nature of a servitude on land in favor of a person, to be governed by the laws of Louisiana pertaining to servitudes. Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207. The mineral servitude can only be created by the landowner through such acts as are used in the transfer of title to immovable property. Long-Bell Petroleum Co. v. Tritico, 216 La. 426, 43 So.2d 782, 791; Revised Civil Code, Articles 743, 766, 770. It is extinguished by the prescription resulting from nonuser of the servitude for ten years following the execution of the deed conveying the right. Frost-Johnson Lumber Co. v. Nabors Oil and Gas Co., 149 La. 100, 88 So. 723. Revised Civil Code, Articles 789, 3546. However, user of a mineral servitude will preserve it for another ten years. Lee v. Giauque, 154 La. 491, 97 So. 669; Louisiana Petroleum Co. v. Broussard, 172 La. 613, 135 So. 1. These principles are well established.

It is equally clear that the reservation or grant of mineral rights in several noncontiguous tracts of land creates separate servitudes and the drilling on one noncontiguous tract of land does not interrupt the running of prescription against the rights in another tract of land. Lee v. Giauque, 154 La. 491, 97 So. 669, 670. However, where several landowners agree to unitize or integrate their mineral interests in various tracts of land, in order to better secure development thereof, and provide for the payment of the proceeds in the proportion which their mineral interests bear to the whole, their agreement is governed by the law of contracts and not by the law of servitudes. In such instances the land is treated as a whole and it is immaterial whether the lands are contiguous or noncontiguous. Brown v. Sugar Creek Syndicate, 195 La. 865, 197 So. 583; Robinson v. Horton, 197 La. 919, 2 So.2d 647; Veeder Company Inc. v. Pan American Production Company, 205 La. 599, 17 So.2d 891; Dobbins v. Hodges, 208 La. 143, 23 So.2d 26; Farrell v. Simms, 209 La. 1072, 26 So.2d 143; Jackson v. Hunt Oil Co., 208 La. 156, 23 So.2d 31.

One of the principal issues in this case relates to the pooling agreement. It is conceded that this agreement was never recorded and despite this fact appellee contends that appellant was charged with notice thereof by virtue of the language employed in the deed from Bodcaw to Good Pine Oil. We think otherwise. Article 2266 of the Revised Civil Code provides that "All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto." This Article is applicable to mineral servitudes and "must be complied with religiously." Haynes v. King, La.Sup., 52 So.2d 531, 539. It is therefore clear that this pooling agreement cannot affect the rights of appellant, a third party.

This brings us to a consideration of the Constitutional questions. In the year 1940 the Louisiana Legislature enacted Act No. 315, which reads in part as follows: "When land is acquired by conventional deed or contract, condemnation or expropriation proceedings by the United States of America, or any of its subdivisions or agencies, from any person, firm, or corporation, and by the act of acquisition, verdict, or judgment, oil, gas, or other minerals or royalties are reserved, or the land so acquired is by the act of acquisition conveyed subject to a prior sale or reservation of oil, gas, or other minerals or royalties, still in force and effect, the rights so reserved or previously sold shall be imprescribable." LSA–Revised Statutes of Louisiana, Title 9, Section 5806. In Whitney National Bank of New Orleans v. Little Creek Oil Company, Inc., La., 33 So.2d 693, the Supreme Court of Louisiana had

occasion to consider this Act in connection with the sale by Bodcaw to the United States on February 11, 1936, and held that Act 315 of 1940 was applicable because of the general rule of law established by the jurisprudence of this State that laws of prescription and those limiting the time within which actions may be brought are retrospective in their operation. De Armas v. De Armas, 3 La.Ann. 526; Shreveport Long Leaf Lumber Co., Inc., v. Wilson, 195 La. 814, 197 So. 566; State v. Alden Mills, 202 La. 416, 12 So.2d 204. This interpretation of the State statute is binding on this court. However, appellant insists that the statute as construed is unconstitutional in that it: (1) disposes of property belonging to the United States in violation of Article IV, Section 3, Clause II of the Constitution; (2) transfers the property of the United States to the appellee in violation of the due process clause of the Fourteenth Amendment; and (3) destroys the reversion of the United States by declaring perpetual the outstanding determinable servitude, thereby impairing the obligation of the 1936 deed in violation of the contract clause, Article 1, Section 10, of the Constitution.

■ True, there is no rule or principle known to our system of the law whereby private property can be taken from one person and conveyed to another for his private use and benefit. It is equally true that remedial legislation frequently has an effect upon the control and disposition of property. The principal restriction upon legislation of this nature appears to be that vested rights must not be disturbed. But many rights, privileges and immunities having to do with ownership under a specific state of the law, cannot be regarded as vested rights. To be a vested right it must have become a title, legal or equitable, to the present or future use and enjoyment of property. Cooley's Constitutional Limitations, (8 ed.), Vol. 2, Chapter XI; see Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426; Pearsall v. Great Northern Railway Company, 161 U.S. 646, 16 S.Ct. 705, 40 L.Ed. 838. It cannot be considered a vested right if it is nothing more than a mere expectation, or hope, based upon an anticipated continuance of the applicable general laws. It is on these general principles that estates tail have been generally changed into estates in fee simple by statutes, the validity of which is unquestioned. The same principles govern rights in property resulting from the marriage relationship. The inchoate right to dower is a mere expectancy until the husband's death and until the husband's tenancy by the curtesy becomes initiate it also is a mere expectancy and may be modified by statute or abolished. Randall v. Kreiger, 90 U.S. 137, 148, 23 Wall. 137, 23 L.Ed. 124. This distinction between rights protected by the Constitution and those subject to legislative change has been dwelt upon at some length because throughout each of the arguments advanced by appellant there appears the recurring proposition that appellant had an indefeasible residual interest, a reversion, a property protected by the Constitution which Act 315 would destroy.

■ Estates in reversion are unknown to Louisiana law. Palmer v. Bender, D.C., 49 F.2d 316. This is so because the quantum theory of estates, upon which the existence of a reversion depends, is foreign to the civil law which is followed in the State of Louisiana. The earlier cases in Louisiana assumed that a landowner's so-called "reversionary" hopes of a servitude lapsed for nonuser was a certain object which could be legally dealt with and sold. Gailey v. McFarlain, 194 La. 150, 193 So. 570. Subsequent cases continued to recognize the so-called "reversionary interest" theory but indicated that the decision in Gailey v. McFarlain decided only that the owner of a certain tract of land subject to a mineral servitude did not afterwards sell his so-called "reversionary rights" or "reversionary interest" in the mineral rights which he had previously sold. McDonald v. Richard, 203 La. 155, 13 So.2d 712. In the McDonald case the facts were that on June 25, 1929, the Morley Cypress Company sold Doctor Richard an undivided one-half interest in 640 acres of land and reserved all of the mineral rights in the land sold. During the life of this servitude Doctor Richard sold the mineral rights in the land and thereafter,

but within the ten year period, sold his undivided interest in the land. The Supreme Court of Louisiana, in an opinion by Chief Justice O'Neill, held that by his sale of the minerals Dr. Richard had· sold something he did not own and the mineral rights belonged to the owner of the land at the time the servitude lapsed for nonuser. Finally, in the case of Liberty Farms v. Miller, 216 La. 1023, 45 So.2d 610, 614, the court said, "One may not reserve reversionary rights to minerals when he is not the owner of the minerals at the time the reservation is made. It is settled that, in such instances, the reservation is ineffective and the outstanding mineral interests revert to the person owning the land at the time prescription accrues." In commenting on this area of the law, Professor Eugene Nabors in his recent report to the Mineral Law Committee of the Louisiana State Law Institute [3] said, "The reversionary interest cases have gone through a transition from dicta admitting the legal possibility of the creation of a reversionary interest by a properly phrased contract,[4] to an express statement that it is settled that sales of reversionary interests can not be made." [5] We conclude that this so-called "reversionary interest" is nothing more than a mere expectancy, or hope, based upon an anticipated continuance without change of the applicable laws of prescription and cannot be regarded as a vested right protected by the Constitution.

Nor is there any merit in the contention that Act 315 of 1940 violates the contract clause of the Federal Constitution. The obligation of a contract consists in its binding force on the party who makes it, which, in turn, depends on the laws in existence when it is made. These laws form a part of the contract as the measure of the obligation to perform by the one party and the right acquired by the other. McCracken v. Hayward, 43 U.S. 608, 612, 2 How. 608, 11 L.Ed. 397. However, laws of evidence, or which concern remedies, acts of limitation, and many other sub-

jects may affect the validity, construction, duration, or discharge of contracts, but changes in these laws are not regarded as necessarily affecting the obligation of contract. Ogden v. Saunders, 25 U.S. 213, 12 Wheat 213, 6 L.Ed. 606; see Jackson v. Lamphire, 28 U.S. 280, 3 Pet. 280, 7 L.Ed. 679; McCracken v. Hayward, 43 U.S. 608, 2 How. 608, 11 L.Ed. 397; Terry v. Anderson, 95 U.S. 628, 24 L.Ed. 365; Ewell v. Daggs, 108 U.S. 143, 2 S.Ct. 408, 27 L. Ed. 682; Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483; Wheeler v. Jackson, 137 U.S. 245, 11 S.Ct. 76, 34 L.Ed. 659; Wilson v. Iseminger, 185 U.S. 55, 22 S.Ct. 573, 46 L.Ed. 804; Ochoa v. Hernandez, 230 U.S. 139, 33 S.Ct. 1033, 57 L.Ed. 1427; Atchafalaya Co. v. F. B. Williams Co., 258 U.S. 190, 42 S.Ct. 284, 66 L.Ed. 559; Chase Securities Corporation v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L. Ed. 1628; Cooley's Constitutional Limitations (8 ed.) Vol. 1, Chapter IX, p. 554 et seq. It is generally held that laws of limitation or prescription go to matters of remedy. But beyond this workable concept lies the principle that their shelter is not a fundamental right of the individual, it is a right given by the State for purposes of its own and not because of the merits of the obligation. "The right does not enter into or become a part of the contract."[6] Such statutes may be modified by shortening the period prescribed, providing the time is still running and a reasonable time remains for commencement of the action, or may be lengthened until such time as the bar of the statute is complete and property rights have vested. Cooley's Constitutional Limitations, page 761, et seq. In Campbell v. Holt, [115 U.S. 620, 6 S.Ct. 213] supra, the Supreme Court said, "It violates no right of his, therefore, when the legislature says, time shall be no bar, though such was the law when the contract was made." In that case the court held that where the lapse of time had not vested title to real or personal property, a state could repeal or extend a statute of

---

3. 25 Tulane Law Review 183.

4. Gailey v. McFarlain, supra; Gulf Refining Co. v. Orr, 207 La. 915, 22 So.2d 269.

5. Liberty Farms v. Miller, supra.

6. Campbell v. Holt, 115 U.S. 620, 628, 6 S.Ct. 209, 29 L.Ed. 483.

limitation, even after the right of action was barred, and thus restore to the plaintiff his remedy. This doctrine was reaffirmed in Chase Securities Corporation v. Donaldson, 325 U.S. 304, 315, 65 S.Ct. 1137, 89 L.Ed. 1628.

In Louisiana the extinguishment of a servitude by nonuse for a given period is a prescription and not a peremption. Gayoso Co., Inc., v. Arkansas Natural Gas, 176 La. 333, 145 So. 677; Sample v. Whitaker, 172 La. 722, 135 So. 38. The distinction between statutes of prescription and statutes of peremption is that statutes of prescription merely bar the remedy while statutes of peremption destroy the cause of action itself. Brister v. Wray Dickinson Co., Inc., 183 La. 562, 164 So. 415, 416. And as was stated in Kearns v. City of New Orleans, La.App., 160 So. 470, 473, "A change in a prescriptive period is not an interference with a substantive right." See Shreveport Long Leaf Lumber Co. v. Wilson, 195 La. 814, 197 So. 566. Articles 789 and 3546 of the Revised Civil Code, which provide for prescription of a servitude by ten years nonuser, are based upon a presumption of abandonment or release of his rights by the person entitled to the servitude. De La Croix v. Nolan, 1842, 1 Rob. 321 (La.). This is the rationale of all statutes of limitation. Wilson v. Iseminger, supra. And being but expressions of the legislature's view of sound public policy, the State obviously must have certain freedom in determining when a presumption of abandonment is no longer to be drawn.

Act 315 of 1940 provides that when lands are conveyed to the United States subject to a prior sale or reservation of oil, gas, or other minerals still in force and effect, the rights so reserved or previously sold shall be imprescribable. It does not state or imply that the reserved rights shall be increased or varied but only that they shall not be lost by prescription. The consideration of $1.75 per acre paid by the United States did not cover the value of any mineral rights. Indeed, since the minerals underlying the lands had previously been sold to Good Pine Oil without limit for time of their enjoyment, Bodcaw did not own any minerals which it could sell to the United States. Neither could it reserve nor sell the expectation of a servitude lapsed for nonuser. Liberty Farm v. Miller, supra; 25 Tulane Law Review 183. All that Bodcaw had which it could sell to the United States was the timber land itself. That was the obligation of the contract and it remains unimpaired. By virtue of its ownership of the land appellant could merely hope that the outstanding servitude might lapse but this hope or expectancy was born of a statute of prescription based on the then existing public policy of the State as declared by its legislature. It was not a part of the obligation of the contract. It was wholly given by law and the power that gave it could increase, diminish, or otherwise alter, or wholly take it away without violating the Federal Constitution.

Judgment affirmed.