688 So.2d 1042 (1996)
MARSH ENGINEERING, INC., et al., Plaintiffs-Appellants,
v.
Ernest L. PARKER, et al., Defendants-Appellees.
No. 94-1129.
Court of Appeal of Louisiana, Third Circuit.
May 8, 1996.
Writ Denied September 27, 1996.
*1043 Walter C. Thompson, Jr., New Orleans, Bob F. Wright, Lafayette, Charles Michael Pisano, New Orleans, for Ernest L. Parker, et al.
Robert Elton Arceneaux, Gail Nick Wise, New Orleans, Warren D. Rush, Lafayette, for Richard D. Barnett.
Marc W. Judice, James J. Hautot, Jr., Lafayette, for New England Insurance Company.
Before THIBODEAUX, COOKS, WOODARD, DECUIR and PETERS, JJ.
COOKS, Judge.
This action arises out of a dispute concerning the ownership of stock in a corporation. The sole issue presented on appeal is whether the trial judge erred in sustaining an exception of prescription; and, thereby, dismissing plaintiffs' suit in entirety. We think so.

RELEVANT FACTS AND PROCEDURAL HISTORY
Richard D. Barnett and Ernest L. Parker, a lawyer, began an attorney-client relationship in 1981. Over time, they also became close friends. In 1984, Parker was informed by a fellow attorney and friend, Logan Nichols, that shares of stock issued by Campbell Wells Corporation and CAMPCO-1985,[1] a related concern, were for sale. Parker discussed the possibility of acquiring Campbell Wells with Barnett and William C. Davis, also one of Parker's clients and a businessman. Barnett, Parker, Nichols and Davis agreed to purchase the corporation. Each investor acquired 25% of Campbell Wells' stock. Barnett's interest in Campbell Wells was acquired in the name of his brother-in-law, Jerry Brazzel.
Campbell Wells was purchased at a cost of $2,052,500.00 on September 10, 1985. The sellers financed $1,052,500.00 of the price and Guaranty Bank & Trust Company of Lafayette (Guaranty) loaned the investors the remaining sum. Guaranty also loaned the investors $500,000.00 as "start up" capital for *1044 use by the corporation. The investors all personally obligated themselves to pay the loan extended by Guaranty. Brazzel, appearing as Barnett's alter ego, signed the loan documents.
Despite Campbell Wells' success, however, Barnett's financial portfolio was not as promising. Barnett also owned Marsh Engineering, a company on the verge of failure.[2] Barnett was in default on loans owed to Guaranty exceeding one million dollars and on the brink of bankruptcy. Parker, also Guaranty's attorney, represented Barnett in an attempt to resolve his financial problems with various creditors; and he continued to advise Barnett as a friend and business partner.
According to Barnett, Parker informed him the Internal Revenue Service and other creditors might seize his interest in Campbell Wells. Parker then suggested Barnett transfer his interest in Campbell Wells for him to hold in trust.
Parker prepared an Act of Cash Sale and Assumption which Barnett, through Brazzel, executed on February 3, 1986. This instrument transferred Barnett 25% interest in Campbell Wells to Parker. As "consideration" for the transfer, Parker assumed fully the obligation of Barnett through Brazzel in favor of Guaranty and further agreed to pay $1,000.00 in cash to him.
William Davis, experiencing financial difficulties as well, transferred his interest in Campbell Wells to Parker on the same day in an identical document. Barnett asserts he did not read the Act of Cash Sale and Assumption before he signed it because he trusted Parker; and, he did not seek advice from "outside" counsel for the same reason. He claims Parker did not inform him of the contract's terms and he did not receive a copy of the agreement before Brazzel signed it. Barnett also asserts Parker did not express to him an intent to release Brazzel as a guarantor on the note executed in favor of Guaranty. Barnett insists he would not have approved the release because Campbell Wells was grossing over one million dollars a year and the company's indebtedness to Guaranty was not in arrears. Barnett further complains the thousand dollars mentioned in the contract as partial consideration for the alleged transfer was not paid to him by Parker.
Parker steadfastly denies the transfer was a simulated transaction. To the contrary, he maintains Barnett fully understood the terms of the Act of Cash Sale and Assumption. Parker asserts he satisfied all the obligations he undertook in the agreement; and, Barnett and Brazzel never were called to pay the substantial Campbell Wells' indebtedness he assumed in favor of Guaranty. Parker also contends Barnett's conduct, following the agreement, was inconsistent with his claimed ownership in Campbell Wells. According to Parker, Barnett's tax returns did not reflect his alleged interest in the company and he did not disclose such continued interest to Guaranty which held notes he defaulted on as part owner and operator of Marsh Engineering.
Barnett alleged he first became suspicious that Parker never intended to hold in trust his interest in Campbell Wells in late 1986 after speaking with a friend. Not believing in the truth of his friend's assertions, Barnett dismissed his initial suspicion as unfounded until late 1987 or early 1988 when he decided to confront Parker at a restaurant in Lafayette, Louisiana. Barnett requested that Parker return his interest in Campbell Wells and Parker refused to do so. Parker also threatened, in Barnett's words, to destroy him if he tried to seek redress.
Campbell Wells' success story continued. In June 1990, Parker and Nichols agreed to merge Campbell Wells with Sanifill, Inc., a public company trading stock on the New York Stock Exchange. They tendered all of Campbell Wells stock in exchange for Sanifill, Inc., stock.
On November 21, 1991, Barnett filed suit seeking damages or, alternatively, rescission of the Act of Sale and Assumption and an accounting, or a declaratory judgment recognizing him as owner of Sanifill's shares of stock in proportion to the 25% interest he *1045 held in Campbell Wells.[3] Barnett premised his claim for relief on the following grounds: breach of contract, fraud, breach of fiduciary duty, failure of consideration, detrimental reliance and nullity of the agreement.
Responding, Parker filed exceptions of no right and/or no cause of action, prescription, and/or peremption. Subsequently, Barnett filed a motion for partial summary relief claiming he was entitled as a matter of law to a judgment declaring the Act of Sale and Assumption a nullity because it was a contract between a lawyer and his client prohibited by the Code of Professional Conduct adopted to regulate the conduct of attorneys licensed to practice in Louisiana.
The trial judge initially rejected all the exceptions filed by Parker and denied the summary judgment motion filed by Barnett. Parker filed an application for a new trial urging that the trial court reconsider and grant his exception of prescription to the suit filed by Barnett. After a hearing, the trial judge agreed and sustained Parker's exception of prescription finding all of Barnett's claims for relief were time barred by La.R.S. 9:5605.
Barnett filed the present appeal. He asserts the trial court legally erred in retroactively applying La.R.S. 9:5605 to the facts of this case. Alternatively, he contends not all the claims asserted in his petition are time barred by La.R.S. 9:5605 because this provision only applies to claims arising from an "attorney-client" relationship.

DISCUSSION
The district court found La.R.S. 9:5605, newly enacted and effective September 7, 1990 (later amended September 21, 1992) applied to bar Barnett's suit retroactively. The Act of Sale and Assumption between Parker and Barnett, through Brazzel, was executed on February 3, 1986. This is the earliest date prescription could have started to run on any of the claims for relief asserted by Barnett. Barnett's original petition was filed on November 21, 1991.
Prior to enactment of La.R.S. 9:5605, as a general rule, actions against attorneys for legal malpractice was considered "delictual" in nature and governed by the one-year liberative prescription period recited in La.Civil Code art. 3492. Braud v. New England Insurance Co., 576 So.2d 466 (La.1991). The courts, however, recognized exceptions to this rule: (1) when the attorney expressly warranted a specific result; (2) when the attorney agreed to perform certain work and did nothing whatsoever; and (3) when the attorney breached a fiduciary duty to his client by engaging in self-dealing or committed fraud. A ten-year liberative prescription period generally applied to actions arising from these instances. Lima v. Schmidt, 595 So.2d 624 (La.1992); Plaquemines Parish Commission Council v. Delta Development Co., 502 So.2d 1034 (La.1987).
It is not seriously disputed, and the trial court found, "but for the application of La. R.S. 9:5605" Barnett's petition stated claims falling within the exceptions mentioned; and, thus, the ten year prescriptive period would apply.
La.R.S. 9:5605 entitled "Action for legal malpractice," provides, in material part:
A. No action for damages against any attorney at law ..., whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
The provision applies to actions "for damages against any attorney at law duly admitted to practice in this state ... whether based upon tort, breach of contract, or otherwise, arising out of an engagement to provide legal services." *1046 First, Barnett argues the statute does not apply to any of the causes of action stated in the petition since they arose prior to its effective date. Second, Barnett argues the trial judge legally erred in finding "all actions against an attorney for his actions in any capacity" are subject to the shorter prescriptive period provided in La.R.S. 9:5605.
While admitting the statute is broad in reach and covers claims based on "contracts," heretofore governed by a longer prescriptive period, Barnett urges the Louisiana Supreme Court's decision in Branch v. Willis-Knighton Medical Center, 92-3086 (La. 4/28/94); 636 So.2d 211, requires us, nevertheless, to narrowly interpret the statute's scope and limit its reaches to "actions traditionally viewed as sounding in legal malpractice." Only one of the four causes of action asserted, he maintains, is brought against Parker in his capacity as an attorney. The claims based on breach of contract, rescission for failure of consideration, and detrimental reliance, he contends, do not "arise out of an engagement to provide legal services." The breach of fiduciary duty claim, though partly arising out of an attorney/client relationship, he asserts, also arises out of the partnership relationship between he and Parker. Only the "nullity" claim, Barnett admits, is brought against Parker as an attorney; and, even this claim, he states, is not subject to the prescription period enacted by La.R.S. 9:5605 because this statute only applies to actions for "damages" which "arise out of an engagement to provide legal services."
Because we find La.R.S. 9:5605 does not retroactively bar Barnett from raising any of the claims asserted in the original or supplemental petition, it is unnecessary for us to determine the statute's ambit. Though tempted, we will not speak in dicta.[4]
A statute of limitation is remedial in nature and, generally, applies to all actions instituted after its effective date even though the cause of action accrues before the statute was enacted. State v. Alden Mills, 202 La. 416, 12 So.2d 204 (1943); Shreveport Long Leaf Lumber Co. v. Wilson, 195 La. 814, 197 So. 566 (1940); DeArmas v. DeArmas, 3 La.Ann. 526 (1848). Even though prescriptive statutes are generally retroactive, they may not violate the constitutional prohibition against divesting a vested right. Such divestiture offends "due process" guaranteed by both the State and United States Constitutions. However, as stated in Lott v. Haley, 370 So.2d 521, 524 (La.1979), "[n]onetheless, a newly-created statute of limitation or one which shortens existing periods of limitation will not violate the constitutional prohibition against divesting a vested right provided it allows a reasonable time for those affected by the act to assert their rights."
Parker does not dispute Barnett's causes of action existed prior to the adoption of La.R.S. 9:5605. He also acknowledges the newly created statute shortened the period of limitation otherwise applicable to Barnett's claims. However, Parker insists La.R.S. 9:5605 does not violate the constitutional prohibition against divesting a vested right because it was effective on September 7, 1990 and Barnett did not file suit until November 22, 1991, over a year later. Parker contends "since Barnett knew about his alleged cause of action in 1987, he had at least one year from September 7, 1990, the effective date of the statute, to sue."
We do not embrace this argument because it charges a litigant, whose constitutional "due process" right is threatened, not only with notice that a new prescriptive statute has been enacted but it requires him to surmise from the Legislature's "silence" that it has granted a "grace period" for filing pre-existing claims. The latter requirement does violence to fundamental "due process" principles. To meet constitutional muster the new statute also must adequately apprise litigants of the Legislature's intent to apply the period, *1047 though reasonable in duration, retroactively to all claims whether arising before or after the enactment.
Nevertheless, Parker encourages us to "read in" to the provision a one-year grace period because the statute recites "no action for damages.... shall be brought unless filed ... within one year from the date of the alleged act, omission, or neglect is discovered or should have been discovered...." Countering, Barnett contends the statute "does not give a [litigant] a reasonable time to sueit gives [him], as to a pre-existing cause of action, no time at all!" We agree. The provision does not, by its language, create a one-year grace period, as suggested by Parker, for filing pre-existing claims. By clear and unambiguous expression, it time bars the filing of all claims, vested or not, against attorneys whether based upon tort, or breach of contract, or otherwise arising out of an engagement to provide legal services unless filed within one year from the date the alleged act, omission, or neglect is discovered or should have been discovered.
Still, Parker insists we should find by implication the Legislature intended to grant a one-year grace period for filing pre-existing claims when it enacted La.R.S. 9:5605. As authority for advancing this position, Parker cites Fust v. Arnar-Stone Laboratories, Inc., 736 F.2d 1098 (5th Cir.1984); Rusher v. Winningham Nissan Volvo, Inc., 550 So.2d 784 (La.App. 2 Cir.1989); Billedeau v. Prather, 493 So.2d 920 (La.App. 3 Cir.1986); Ramirez v. St. Paul Fire & Marine Ins. Co., 433 So.2d 219 (La.App. 3 Cir.), writ denied, 441 So.2d 212 (La.1983), cert. denied, 465 U.S. 1106, 104 S.Ct. 1610, 80 L.Ed.2d 139 (1984); Reichenphader v. Allstate Ins. Co., 418 So.2d 648 (La.1982); Dominguez v. Travelers and Allstate Ins. Co., 415 So.2d 434 (La.App. 1 Cir.), writ denied, 420 So.2d 174 (La.1982); Tilley v. Government Employees Ins. Co., 396 So.2d 525 (La.App. 3 Cir.1981). The list of authorities cited by Parker, though long, does not move us to adopt his argument. In each instance, the court noted the Legislature either provided for a delay in the effective date of the statute (as in Reichenphader, Tilley, Rusher, and Dominguez) or the litigant by waiting two years or more filed suit even after the peremptive period granted in the statute (as in Ramirez, Billedeau, and Fust). When examined, these cases are not on all fours with the present case. Parker's argument, if accepted, requires us to "leap" even further in search of legislative intent. We are not free, however, to do as we please. Louisiana Civil Code article 9 mandates "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences," we shall apply it as written. The Louisiana Supreme Court in Maltby v. Gauthier, 506 So.2d 1190, 1193 (La.1987), also has instructed us "[w]hen the Legislature, in enacting prescriptive statutes potentially affecting existing causes of action, fails to require parties to exercise vested rights within a reasonable time, the courts should refrain from supplying this legislative lapse." We note, as well, the Supreme Court in Lima v. Schmidt, 595 So.2d 624 (La.1992), albeit in dicta, stated even if considered it would not have applied La.R.S. 9:5605, which became effective in September 1990, because the cause of action in that case arose before the statute's effective date.[5]
In plain and simple English, the Legislature failed to expressly declare in La.R.S. 9:5605, when first enacted, that persons with vested claims against attorneys were required to file suit in a shortened period; and we are prevented from supplying such period by implication or "judicial" finagling.
The Legislature's decision to amend La. R.S. 9:5605 in 1992 further buttresses our conclusion. As amended, the Legislature added the following section to the statute:
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to *1048 September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect....
While the Legislature clearly expressed in 1992 an intent to apply La.R.S. 9:5605 retroactively to all claims falling within its ambit arising before or after its enactment, this declaration came too late to bar Barnett from filing his claims. Barnett's suit was filed on November 21, 1991, before the statute was amended. Thus, it was timely. We are restrained from finding this later expression by implication confirmed the Legislature's intent initially to apply the statute retroactively to existing claims.
Notwithstanding our holding in Graham v. Conque, 626 So.2d 870 (La.App. 3 Cir.1993), writ denied, 634 So.2d 383 (La.1994), we find La.R.S. 9:5605 does not apply retroactively to bar any of the claims asserted by Barnett.[6] Recently in Bell v. Ott, 671 So.2d 941 (La. App. 5th Cir.1996) the Louisiana 5th Circuit Court of Appeal addressed the retroactive effect of La.R.S. 9:5605(B), as amended in 1992. We reference and find persuasive the original observations of our brethrens in Bell:
"No doubt aware of this problem with the statute, that the reduction in the statute of limitations was terminating some claims without giving those affected a reasonable opportunity to assert their claims, the legislature amended La.R.S. 9:5605 in 1992, to add a "saving clause" to the statute, allowing those with claims that would otherwise be prescribed by the enactment of the statute a reasonable time within which to assert their claim. Thus, when Subsection B was added, it was not extending the prescriptive period applicable to plaintiff's case, but rather, was providing a grace period for the filing of an action that was thereby being reduced. That provision was enacted specifically to apply to cases like plaintiffs, where the time that they could assert their cause of action was being reduced by the statute. Without the addition of this clause, allowing those affected by the act reasonable time to assert their claims, where the period of limitation applicable to their claim was being statutorily shortened, the statute would be inapplicable to that claim as divesting the affected party of a vested right."
Though mindful that the court on rehearing in Bell reversed its original decision, nonetheless we are convinced the reasons articulated by that court on first review were sound and in accord with the Louisiana Supreme Court's rulings.
Accordingly, the trial court's judgment maintaining the exception of prescription and dismissing the suit is reversed. The case is remanded to the trial court for further proceedings. All costs are assessed against defendant-appellee.
REVERSED AND REMANDED.
NOTES
[1] Hereinafter referred together as Campbell Wells.
[2] Barnett's interest in this company also was held nominally in Brazzel's name.
[3] Named in the petition as plaintiffs are Marsh Engineering, Inc. and Richard D. Barnett. Collectively, we will refer to them in the singular, using only Barnett's name.
[4] We simply note William C. Davis, also a business partner in the Campbell Wells' venture and client of Parker, appealed the grant of a motion for summary judgment by the United States District Court for the Western District of Louisiana dismissing his claims which were virtually identical to those raised by Barnett in this case. Reversing this ruling, the United States Fifth Circuit Court of Appeal concluded La.R.S. 9:5605's one-year prescriptive period does not apply to every action against an attorney and reasoned that its scope is limited to "traditional legal malpractice claims." Davis v. Parker, 58 F.3d 183 (5th Cir.1995).
[5] Further, the Louisiana Supreme Court in Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La. 1982) and Roger v. Dufrene, 613 So.2d 947 (La. 1993), in dicta, indicated it would not retroactively apply similar statutes of limitation to causes of action arising prior to their enactment. See also Sessions & Fishman v. Liquid Air Corporation, 94-0003 (La.App. 4 Cir. 8/17/94), 642 So.2d 249.
[6] Although the majority applied R.S. 9:5605, the claims asserted in the Graham case also were time barred under the old prescriptive period codified in Louisiana Civil Code Article 3492.