886 So.2d 607 (2004)
Lonnie T. BURNS, Individually and on Behalf of the Estate of Raymond Burns, Ken Burns, Victor Burns, Bryan Campbell and Regina Rowe
v.
CLD, INC. d/b/a Green Meadow Haven Nursing Home and Evanston Insurance Company.
No. 38,998-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 2004.
*609 Bolen, Parker & Brenner, Ltd., A.P.L.C., by Madeline J. Lee, James A. Bolen, Jr., Alexandria, for Defendant-Appellant, CLD, Inc. d/b/a Green Meadow Haven Nursing Home.
Gold, Weems, Bruser, Sue & Rundel, by Peggy D. St. John, Michael J. O'Shee, Alexandria, for Defendant-Appellee, Evanston Insurance Co.
Johnson & Placke, by Allan L. Placke, West Monroe, for Plaintiffs-Appellees, Lonnie T. Burns, et al.
Roedel, Parsons, Koch, Blache, Balhoff & McCollister, by David A. Wooldridge, Jr., Larry M. Roedel, Baton Rouge, for Intervenor, Louisiana Patient's Compensation Fund Oversight Board.
Before WILLIAMS, GASKINS and DREW, JJ.
GASKINS, J.
CLD, Inc. d/b/a Green Meadow Haven Nursing Home, appeals a trial court ruling granting summary judgment in favor of Evanston Insurance Company (Evanston) on the issue of insurance coverage, and denying CLD's motion for partial summary judgment and exception of prematurity. For the following reasons, we affirm the trial court judgment.

FACTS
The decedent, Raymond Burns, was a resident of Green Meadow Haven, a nursing home in Coushatta, Louisiana, operated by CLD, Inc. (CLD). On December 24, 2001, Mr. Burns was administered medication intended for another resident. He became ill, and the next day he was transferred to the local hospital. On December 31, 2001, he was placed on life support and on January 1, 2002, was transferred to a Shreveport hospital. Mr. Burns died on January 11, 2002.
Mr. Burns' five children, Lonnie T. Burns, Victor Burns, Ken Burns, Bryan Campbell, and Regina Rowe, filed a medical malpractice complaint with the Louisiana Patient's Compensation Fund (PCF) on September 17, 2002. Initially the PCF advised the plaintiffs that CLD was not a covered provider. On December 18, 2002, the plaintiffs filed a wrongful death and survival action in the trial court against CLD and its professional liability insurer, Evanston. On March 12, 2003, the PCF sent a letter to the plaintiffs stating that CLD was enrolled in the PCF from December 31, 2001, to October 1, 2003.
CLD filed an exception of prematurity seeking dismissal of the plaintiffs' petition, claiming coverage under the Louisiana Medical Malpractice Act (MMA). CLD argued that it was a covered health care provider under the MMA at all times pertinent to the plaintiffs' claims as evidenced by a certificate of enrollment issued to CLD by the PCF on January 16, 2002. The certificate provides that CLD was an enrollee in the PCF for the period of December 31, 2000, through December 31, 2001, under a "claims made" policy issued by Evanston and for the period December 31, 2001, through October 1, 2003, under a self-insured occurrence policy.
Evanston filed a motion for summary judgment, claiming that its policy provided *610 "claims made" coverage. The policy required that, in order for coverage to attach, a claim must be made against the insured during the policy period. According to Evanston, the claim in the present case was brought after the policy expired on December 31, 2001. Also, CLD did not purchase an extended reporting endorsement/tail coverage to cover claims filed after the effective date of the policy.[1] Therefore, it asserted that there was no coverage for these claims.
CLD filed its own motion for partial summary judgment claiming that La. R.S. 22:629 prohibits enforcement of policy provisions requiring that a claim be made within the policy period if it reduces the prescriptive period against the insurer to less than one year. According to CLD, under this statute, it should be covered for all claims brought within one year of a tort or discovery of a tort.
The PCF Oversight Board intervened, seeking a decision as to whether CLD was covered by the MMA, given the facts that CLD did not purchase tail coverage from Evanston and did not pay the PCF tail coverage surcharge to extend the reporting period for PCF coverage "as of the date the claim was filed."
The motions for summary judgment and the exception of prematurity were heard in the trial court on February 19, 2004. The trial court granted Evanston's motion for summary judgment, finding that there was no insurance coverage for the plaintiffs' claims. The court denied CLD's motion for partial summary judgment and its exception of prematurity. CLD appealed, arguing that the trial court erred in holding that there was no coverage for the plaintiffs' claims under the "claims made" insurance policy issued by Evanston, despite the fact that there was coverage during the time of the alleged malpractice and suit was filed within one year of the date of the alleged malpractice. CLD also argues that this error led to the trial court's erroneous dismissal of its exception of prematurity.[2]

LEGAL PRINCIPLES
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action and the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
CLD contends that Evanston could not deny coverage for any malpractice claim which was asserted within one year of the occurrence. This case concerns a "claims made" insurance policy. The major distinction between the occurrence policy and the "claims made" policy constitutes the difference between the peril insured. In *611 the occurrence policy, the peril insured is the occurrence itself. Once the occurrence takes place, coverage attaches even though the claim may not be made for some time thereafter. In the "claims made" policy, it is the making of the claim which is the event and peril being insured, subject to policy language, regardless of when the occurrence took place. Anderson v. Ichinose, supra.
A "claims made" insurance policy was issued by Evanston to CLD for the period beginning December 31, 2000, and ending December 31, 2001. Under the policy, Evanston agreed:
To pay on behalf of the Insured all sums in excess of the deductible amount stated in the Declarations which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD for personal injury by reason of any negligent act, error or omission in professional services rendered or that should have been rendered subsequent to the retroactive date specified in the Declarations by any person for whose acts, errors or omissions the Insured is legally responsible, and arising out of the conduct of the Insured's profession....
Evanston did not renew the policy and CLD did not purchase tail coverage for claims like the instant one which were based upon acts during the policy period, but reported later.
The plaintiffs' right to sue Evanston arises out of the Direct Action Statute, La. R.S. 22:655(B)(1) which provides in pertinent part:
The injured person or his or her survivors or heirs mentioned in Subsection A, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido....
CLD argues that the effect of the "claims made" language in the Evanston policy violates the statutory language of La. R.S. 22:629 which states in pertinent part:
A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state or any group health and accident policy insuring a resident of this state, regardless of where made or delivered shall contain any condition, stipulation, or agreement:
....
(3) Limiting right of action against the insurer to a period of less than twelve months next after the inception of the loss when the claim arises under any insurance classified and defined in R.S. 22:6(10), (11), (12), and (13), or to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.
CLD asserts that the "claims made" policy, requiring suit to be filed within the policy period, limits the prescriptive period for filing suit for damages arising from the alleged malpractice to less than one year, in contravention of La. R.S. 22:629. It bases this argument on Hedgepeth v. Guerin, 96-1044 (La.App. 1st Cir.3/27/97), 691 So.2d 1355, writ denied, 97-1377 (La.9/26/97), 701 So.2d 983, and Bennett v. Krupkin, 1999-2702 (La.App. 1st Cir.12/22/00), 779 So.2d 923, writ denied, XXXX-XXXX (La.3/30/01), 788 So.2d 1190.
In Hedgepeth, a podiatrist had a "claims made" insurance policy effective from October 2, 1985, through January 31, 1986, but the policy was cancelled on November *612 10, 1985. On October 2, 1985, within the policy period, the podiatrist treated the diabetic plaintiff's foot problem. An infection developed, resulting in amputation of part of the foot. On July 23, 1986, a medical malpractice claim was filed against the podiatrist and his insurer. The insurer filed for summary judgment, asserting that it was not informed of this claim within the policy period, therefore the claim was not covered.
The appellate court found that, by limiting occurrence and reporting to the policy period, the plaintiff effectively had less than one year from the date of the malpractice to file suit. The court found the policy provision to be without effect because it conflicted with La. R.S. 22:629. The court stated that such provisions would enable an insurer to escape liability for an act of medical malpractice committed shortly before the end of the policy period but not reported until after the policy was no longer in force.
In Bennett v. Krupkin, supra, a doctor had "claims made" insurance through January 15, 1997, and did not purchase tail coverage. On October 25, 1996, the plaintiff discovered that she had breast cancer which had been misdiagnosed by the doctor. She filed suit on April 17, 1997. The court in Bennett applied Hedgepeth to find that the plaintiff's claim was covered by insurance. The court reasoned that a policy provision which effectively reduces the prescriptive period the plaintiff has to commence his cause of action is in clear violation of La. R.S. 22:629.
Similarly in Gary v. Witherspoon, XXXX-XXXX (La.App. 3d Cir.6/2/99), 743 So.2d 708, a dentist had "claims made" insurance coverage from February 10, 1988, through July 1995. He did not purchase tail coverage. The dentist treated the plaintiff from August 11, 1993, through January 25, 1996. On July 2, 1996, she discovered the dentist's malpractice and filed suit on June 29, 1997. The court relied on Hedgepeth to hold that disallowing the claim would violate La. R.S. 22:629. The court found that the statute voided the insurance policy language requiring that the claim be made within the policy period.[3]
According to Evanston, the supreme court case of Anderson v. Ichinose, supra, is controlling. In Anderson, a doctor had a "claims made" policy which expired on October 1, 1987. In October 1986, the doctor examined a biopsy of a mole from the plaintiff's toe and reported that it was not cancerous, but recommended its removal to prevent it from developing into cancer. The mole was removed in December 1987 and sent to the defendant doctor who determined that it was cancerous. Several weeks later, the plaintiff's toe was amputated. Reexamination of the biopsy from October 1986 revealed that the doctor misdiagnosed the mole. Suit was filed against the doctor in November 1988. In May 1995, the doctor's insurer was added. The insurer filed a motion for summary judgment arguing that there was no coverage *613 under the policy because, although the alleged malpractice occurred during the policy period, the claim was not made or reported until after the policy expired on October 1, 1987. The doctor did not purchase tail coverage. The court considered the question of whether the policy's denial of coverage, where the professional service occurred within the policy period but the claim was not made or reported until after the policy period expired, violated public policy.
The Anderson court cited Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d 478 (La.1973), in which it concluded that a "claims made" policy that clearly limited coverage to acts discovered and reported during the policy period is not "per se impermissible." In Anderson, the plaintiffs urged that the Direct Action Statute contained in La. R.S. 22:655 confers substantive rights on third-party tort victims which are vested when the injury occurs. The Anderson court determined that, unless there is a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume. The court determined that the application of the requirements of a "claims made" policy under the facts of that case did not violate public policy. Anderson did not discuss La. R.S. 22:629.

DISCUSSION
We first note that this case involves both a survival action and a wrongful death action. The survival action and the wrongful death actions are two separate and distinct causes of action that arise at different times, address themselves to the recovery of damages for different injuries and losses, and accrue to different tort victims.

Survival Action
The survival action comes into existence simultaneously with the tort, permits recovery only for damages suffered by the victim from the time of the injury to the moment of death, and is transmitted to the victim's beneficiaries upon his death. The survival action in the present case would only be covered by the "claims made" insurance policy if a claim was made within the policy period. No such claim was made. Therefore, there is no insurance coverage for the survival action.

Wrongful Action
The wrongful death action arises only if and when the victim dies and compensates the beneficiaries for their own individual injuries that occur at the moment of the victim's death and thereafter. The wrongful death action is not a derivative cause of action. Rather, the wrongful death action is an independent and distinct action that arises even in the absence of a viable personal injury action by the direct tort victim and compensates the beneficiaries for their own individual injury arising out of the victim's death. Walker v. State Farm Mutual Automobile Insurance 37,063 (La.App.2d Cir.6/25/03), 850 So.2d 882, writs denied, 2003-2019, 2003-2117 (La.12/19/03), 861 So.2d 574, 575.
As to the wrongful death action in this case, the negligent act or occurrence happened on December 24, 2001, although the right of action did not accrue until the father's death on January 11, 2002. Since no claim was made for the negligent act during the policy term, the "claims made" policy does not provide coverage for the wrongful death action. When the plaintiffs' father died, CLD had occurrence-based insurance which did not cover the wrongful death cause of action because the *614 occurrence of negligence took place prior to its inception.
An insurance policy is a contract and has the effect of law between the parties. La. C.C. art. 1983; Spurrell v. Ivey, 25,359 (La.App.2d Cir.1/25/94), 630 So.2d 1378. In the absence of conflict with statutory provisions or public policy, insurers may by unambiguous and clear notice provisions limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract. Livingston Parish School Board v. Fireman's Fund American Insurance Company, supra.
Such a provision in a "claims made" policy was found not to be against public policy in Anderson as well as Livingston, both cases decided by the Louisiana Supreme Court. We choose to follow that reasoning in this matter. We reject the reasoning of Hedgepeth v. Guerin, supra, Bennett v. Krupkin, supra, and Gary v. Witherspoon, supra. We find that the insurance policy properly limited coverage to claims made within the policy period. Because a claim was not made within the policy period, there is no coverage. The trial court correctly granted summary judgment in this matter.

PATIENT COMPENSATION FUND COVERAGE
The court also correctly denied the exception of prematurity filed by CLD. The type of PCF coverage follows the type of coverage the health care provider has. La. R.S. 40:1299.42 E(1). Until December 31, 2001, the PCF coverage was based on the "claims made" coverage of the Evanston policy. Thereafter, when the nursing home became self-insured, the coverage became occurrence-based. Since no claim was made prior to December 31, 2001, no occurrence took place after that, and CLD failed to pay the PCF surcharge for tail coverage for claims arising from malpractice within the period of coverage of the Evanston policy, CLD is not covered by the PCF in this case. When the nursing home did not procure tail coverage insurance after the expiration of their "claims made" policy, any claims made after December 31, 2001, against the insurer or the PCF were not covered by either of them.

CONCLUSION
For the reasons stated above, we affirm the trial court ruling granting summary judgment in favor of Evanston Insurance Company and denying the motion for partial summary judgment filed by CLD, Inc. We also affirm that portion of the trial court judgment denying the exception of prematurity filed by CLD, Inc. Costs in this court are assessed to CLD, Inc.
AFFIRMED.
NOTES
[1] This extension, referred to as "tail coverage," covers occurrences within the policy period that produce claims within the specified extended reporting period. See Anderson v. Ichinose, 1998-2157 (La.9/8/99), 760 So.2d 302.
[2] The plaintiffs and the PCF filed briefs in this matter urging this court to affirm the trial court judgment.
[3] In Verhalen v. Forum Health Management of Georgia, Inc., 34,090 (La.App.2d Cir.11/3/00, 771 So.2d 238). 771 So.2d 238, writ denied, XXXX-XXXX (La.3/9/01), 786 So.2d 738, this court considered the assertion that a medical malpractice claim had prescribed. A doctor had "claims made" coverage during the time the alleged malpractice occurred, but the claim was not brought against him until seven years after the date of the alleged malpractice, long after the expiration of the policy. The insurer was added ten years after the alleged malpractice. Although this court reviewed Hedgepeth and Bennett, we concluded that under the facts presented, La. R.S. 22:629 was not violated. See also Robicheaux v. Adly, XXXX-XXXX (La.App. 3d Cir.1/31/01), 779 So.2d 1048, writ denied, 2002-2783 (La.2/07/03), 836 So.2d 100, finding that the time to bring the claim was not impermissibly limited by the policy language.