# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 06-1137


**MARSH ENGINEERING, INC. AND RICHARD D. BARNETT**

**VERSUS**

**EARNEST L. PARKER, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF LAFAYETTE, NO. 91-5553
HONORABLE JULES D. EDWARDS, III, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## J. DAVID PAINTER
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED.**



**Warren D. Rush**
**P.O. Box 53713**
**Lafayette, LA 70505**
**Counsel for Plaintiff-Appellant:**
    **Richard D. Barnett**

**L. Lane Roy**
**Dawn L. Morris**
**P.O. Drawer 94-C**
**Lafayette, LA 70509**
**Counsel for Defendant-Appellee**
    **Ace American Insurance Co.**

**PAINTER, Judge**.

The Plaintiff, Richard D. Barnett, appeals a trial court judgment dismissing, as untimely, his suit against Ace American Insurance Company (Ace), professional liability insurer of attorney Ernest L. Parker. For the following reasons, we affirm.

FACTS

The underlying facts of this case were set out by this court in its opinion in an earlier appeal, as follows:

> Richard D. Barnett and Ernest L. Parker, a lawyer, began an attorney-client relationship in 1981. Over time, they also became close friends. In 1984, Parker was informed by a fellow attorney and friend, Logan Nichols, that shares of stock issued by Campbell Wells Corporation and CAMPCO-1985, a related concern, were for sale. Parker discussed the possibility of acquiring Campbell Wells with Barnett and William C. Davis, also one of Parker's clients and a businessman. Barnett, Parker, Nichols and Davis agreed to purchase the corporation. Each investor acquired 25% of Campbell Wells' stock. Barnett's interest in Campbell Wells was acquired in the name of his brother-in-law, Jerry Brazzel.

> Campbell Wells was purchased at a cost of $2,052,500.00 on September 10, 1985. The sellers financed $1,052,500.00 of the price and Guaranty Bank & Trust Company of Lafayette (Guaranty) loaned the investors the remaining sum. Guaranty also loaned the investors $500,000.00 as "start up" capital for use by the corporation. The investors all personally obligated themselves to pay the loan extended by Guaranty. Brazzel, appearing as Barnett's alter ego, signed the loan documents.

> Despite Campbell Wells' success, however, Barnett's financial portfolio was not as promising. Barnett also owned Marsh Engineering, a company on the verge of failure. Barnett was in default on loans owed to Guaranty exceeding one million dollars and on the brink of bankruptcy. Parker, also Guaranty's attorney, represented Barnett in an attempt to resolve his financial problems with various creditors; and he continued to advise Barnett as a friend and business partner.

> According to Barnett, Parker informed him the Internal Revenue Service and other creditors might seize his interest in Campbell Wells. Parker then suggested Barnett transfer his interest in Campbell Wells for him to hold in trust.

1

Parker prepared an Act of Cash Sale and Assumption which Barnett, through Brazzel, executed on February 3, 1986. This instrument transferred Barnett['s] 25% interest in Campbell Wells to Parker. As "consideration" for the transfer, Parker assumed fully the obligation of Barnett through Brazzel in favor of Guaranty and further agreed to pay $1,000.00 in cash to him.

William Davis, experiencing financial difficulties as well, transferred his interest in Campbell Wells to Parker on the same day in an identical document. Barnett asserts he did not read the Act of Cash Sale and Assumption before he signed it because he trusted Parker; and, he did not seek advice from "outside" counsel for the same reason. He claims Parker did not inform him of the contract's terms and he did not receive a copy of the agreement before Brazzel signed it. Barnett also asserts Parker did not express to him an intent to release Brazzel as a guarantor on the note executed in favor of Guaranty. Barnett insists he would not have approved the release because Campbell Wells was grossing over one million dollars a year and the company's indebtedness to Guaranty was not in arrears. Barnett further complains the thousand dollars mentioned in the contract as partial consideration for the alleged transfer was not paid to him by Parker.

Parker steadfastly denies the transfer was a simulated transaction. To the contrary, he maintains Barnett fully understood the terms of the Act of Cash Sale and Assumption. Parker asserts he satisfied all the obligations he undertook in the agreement; and, Barnett and Brazzel never were called to pay the substantial Campbell Wells' indebtedness he assumed in favor of Guaranty. Parker also contends Barnett's conduct, following the agreement, was inconsistent with his claimed ownership in Campbell Wells. According to Parker, Barnett's tax returns did not reflect his alleged interest in the company and he did not disclose such continued interest to Guaranty which held notes he defaulted on as part owner and operator of Marsh Engineering.

Barnett alleged he first became suspicious that Parker never intended to hold in trust his interest in Campbell Wells in late 1986 after speaking with a friend. Not believing in the truth of his friend's assertions, Barnett dismissed his initial suspicion as unfounded until late 1987 or early 1988 when he decided to confront Parker at a restaurant in Lafayette, Louisiana. Barnett requested that Parker return his interest in Campbell Wells and Parker refused to do so. Parker also threatened, in Barnett's words, to destroy him if he tried to seek redress.

Campbell Wells' success story continued. In June 1990, Parker and Nichols agreed to merge Campbell Wells with Sanifill, Inc., a public company trading stock on the New York Stock Exchange. They tendered all of Campbell Wells stock in exchange for Sanifill, Inc., stock.

On November 21, 1991, Barnett filed suit seeking damages or, alternatively, rescission of the Act of Sale and Assumption and an accounting, or a declaratory judgment recognizing him as owner of Sanifill's shares of stock in proportion to the 25% interest he held in Campbell Wells. Barnett premised his claim for relief on the following grounds: breach of contract, fraud, breach of fiduciary duty, failure of consideration, detrimental reliance and nullity of the agreement.

*Marsh Eng'g, Inc. v. Parker*, 94-1129, pp. 1-4 (La.App. 3 Cir. 5/8/96), 688 So.2d 1042, 1043-45 (footnote omitted).

On October 3, 2003, in his sixth supplemental and amending petition, the Plaintiff added Ace as a party defendant, asking for judgment against him as Parker's professional liability insurer. Ace was successor to Cigna Insurance Company which issued a policy of professional liability insurance to Parker's law firm. Ace filed exceptions of prescription and no cause of action, and, alternatively, a motion for summary judgment. The Plaintiffs filed a seventh supplemental petition.

The trial court heard the exceptions on June 20, 2005 and rendered a judgment stating that "the Exception, No Cause of Action regarding Peremption on behalf of Ace American Insurance Company be and is hereby granted and the Plaintiff's suit against Ace American Insurance Company be dismissed with prejudice at the cost of Plaintiffs." Marsh Engineering was voluntarily dismissed from the action in February 2006. The Plaintiff now appeals the judgment.

DISCUSSION

After examining the record, it is clear that the only issue before this court is whether Ace was timely notified of the claim against it.

It is uncontested that the policy issued by Cigna is a claims made policy. The policy provided to Parker states that the "insurance is limited to liability for only

those CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD."

> [A] "claims made" insurance policy is one in which coverage attaches only if the negligent harm is discovered and reported within the policy period. *Ward v. Vizzini*, 94-638 (La.App. 5 Cir. 5/14/97), 695 So.2d 1012, *writ denied*, 97-2142 (La.11/14/97), 703 So.2d 632. "Where a policy unambiguously and clearly limits coverage to acts discovered and reported during the policy term, such limitation of liability is not per se impermissible." *Livingston Parish School Bd. v. Fireman's Fund Am. Ins. Co.*, 282 So.2d 478, 481 (La.1973). This is in accordance with the general principle that, in the absence of conflict with statute or public policy, insurers may by unambiguous and clearly noticeable provisions limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract. *Anderson v. Ichinose*, 98-2157 (La.9/8/99), 760 So.2d 302. However, an insurer cannot limit the prescriptive period in a policy for a period of less than twelve months. La.R.S. 22:629.

*Robicheaux v. Adly*, 00-1207, pp. 4-5 (La.App. 3 Cir. 1/31/01), 779 So.2d 1048, 1052.

*See also Regions Bank v. Kountz*, 05-1106 (La.App. 3 Cir. 5/31/06), 931 So.2d 506.

However, it is clear that La.R.S. 22:629 does not extend the protection of a liability policy to risks that were either not covered by the policy or which it excluded. *Robicheaux*, 779 So.2d 1048. The terms of the policy issued to Parker limit coverage to claims first made against him during the policy period.

The Plaintiff asserts that this limitation should not apply to him because of difficulty in finding which company had acquired Cigna. However, unlike the policy in the *Robicheaux* and *Regions Bank* cases, the policy in this case does not require notice to the insurer within the policy period, rather it requires only that a claim be made against the insured within the policy period. However, no formal demand was made on Parker, the insured, until November 26, 1990, more than four years after the policy expired and more than four years after the act which is alleged to have given rise to the Plaintiff's cause of action. No evidence was introduced to suggest that

4

Parker or his insurer knew or should have known about the claim during the policy period or within a year of the accrual of the Plaintiff's cause of action. Even the date Barnett first confronted Parker with his concerns about the transfer of shares was more than a year after the expiration of the policy, as the record shows that this event occurred in late 1987 or early 1988. Therefore, as in *Robicheaux*, although Parker's "'claims made' policy had a limitation, when the facts of this case are considered, it did not shorten the statutorily mandated period" dictated by La.R.S. 9:5605 or La.R.S. 22:629. *Id.* at 1054.

Therefore, the trial court correctly concluded that there was no coverage under the Ace policy and that Barnett's claim against Parker was perempted.

CONCLUSION

For these reasons, the judgment of the trial court dismissing the Plaintiff's action against Ace is affirmed. Costs of this appeal are assessed to the Plaintiff, Richard D. Barnett.

AFFIRMED.