975 So.2d 804 (2008)
Melissa GUTHRIE, et al., Plaintiffs-Appellants
v.
LOUISIANA MEDICAL MUTUAL INSURANCE COMPANY, et al., Defendants-Appellees.
No. 42,974-CA.
Court of Appeal of Louisiana, Second Circuit.
February 13, 2008.
*806 James D. Caldwell, for Plaintiffs-Appellants.
Hudson, Potts & Bernstein, L.L.P., by Gordon L. James, for Defendants-Appellees, H. Clint McCready, M.D. & LAMMICO.
Guste, Barnett and Shusan, L.L.P., by Gerald F. Arceneaux, Richard L. Weil, for Defendant-Appellee, Randolph H. Taylor, M.D.
Marc W. Judice, for Defendant-Appellee, The Medical Protective Company.
Before BROWN, GASKINS and CARAWAY, JJ.
GASKINS, J.
The plaintiffs, Melissa Guthrie, Liz Ficker, Danny Talley, and Kenneth Talley, appeal from a trial court ruling which granted summary judgment in favor of Medical Protective Company in connection with malpractice claims arising from the death of their father, Malvin H. Talley. For the following reasons, we affirm the trial court judgment.

FACTS
The plaintiffs filed a wrongful death and survival action against Dr. Randolph H. Taylor, his insurer, the Medical Protective Company (MPC), Dr. H. Clint McCready, and his insurer, Louisiana Medical Mutual Insurance Company (LAMMICO), arising from the death of their father, Malvin H. Talley, following a left knee replacement which became infected. Dr. Taylor performed the surgery in May 2002. In March 2003, the knee became infected and Mr. Talley was admitted to the hospital. On March 26, 2003, Dr. Taylor removed the knee joint and Mr. Talley was sent to rehabilitation under the care of Dr. McCready. In June 2003, Mr. Talley was readmitted to the hospital. He continued to have problems with infection in the knee and Dr. Taylor performed a total left knee replacement revision. Mr. Talley's condition deteriorated and on July 17, 2003, he died of sepsis.
On July 19, 2004, the plaintiffs convened a medical review panel. The panel decided adversely to the plaintiffs. On May 16, 2006, the plaintiffs filed the present suit alleging various acts of malpractice by Drs. Taylor and McCready in failing to deal with the infection in Mr. Talley's knee.
The MPC filed exceptions of no cause and no right of action, asserting that Dr. Taylor had a "claims made" policy which terminated on June 20, 2004. Under such policies, coverage applies upon the bringing of a claim, not upon the occurrence of the event giving rise to the claim. The plaintiffs' claim was filed with the Louisiana *807 Patient's Compensation Fund (PCF) on July 19, 2004, one month after the MPC policy expired. Dr. Taylor had originally arranged to purchase extended coverage with the MPC (also known as tail coverage), but decided instead to become self-insured. He posted security with the PCF and obtained occurrence coverage rather than "claims made" coverage. The effective date of the occurrence coverage was from June 20, 2004, until June 20, 2007.
On February 26, 2007, the MPC filed a motion for summary judgment, claiming that it provided a "claims made" insurance policy to Dr. Taylor which terminated June 20, 2004, and the plaintiffs' claim was not filed with the PCF until July 19, 2004. The MPC basically asserted the same claims raised in the exceptions of no right and no cause of action and urged that it should be dismissed because it did not provide coverage to Dr. Taylor for the plaintiffs' claims.
A hearing was held on April 12, 2007, on the motion for summary judgment. On April 27, 2007, a judgment was filed by the trial court granting the MPC's motion for summary judgment. All the plaintiffs' claims against the MPC were dismissed and the trial court certified the judgment as an appealable final judgment. The plaintiffs appealed.

"CLAIMS MADE" POLICY
The plaintiffs argue that the MPC's "claims made" policy is void because it is in contravention of the statutory provisions of La. R.S. 22:629. At the time the plaintiffs' claim was made, the statute provided that insurance contracts cannot limit the right of action against the insurer to a period of less than one year from the time when the cause of action accrues. The plaintiffs contend that the "claims made" policy reduced the prescriptive period they had to file suit to less than one year from the accrual of the action, in violation of La. R.S. 22:629.[1] This argument is without merit.

Legal Principles
Appellate courts review summary judgments de novo under the same criteria *808 that govern a district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Costello v. Hardy, XXXX-XXXX (La.1/21/04), 864 So.2d 129. A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2); Mosley v. Temple Baptist Church of Ruston, Louisiana, Inc., 40,546 (La.App. 2d Cir.1/25/06), 920 So.2d 355.
Interpretation of an insurance policy usually involves a legal question which can be resolved properly in the framework of a motion for summary judgment. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. La. C.C. art. 2045; Bonin v. Westport Insurance Corporation, XXXX-XXXX (La.5/17/06), 930 So.2d 906. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art. 2047; Bonin v. Westport Insurance Corporation, supra. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes. Bonin v. Westport Insurance Corporation, supra.

Discussion
The "claims made" policy in this case specifies in pertinent part:
In consideration of the payment of the premium, receipt of which is hereby acknowledged, and subject to the limits of liability and other terms of the policy, the Company hereby agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the Insured of his estate,
A. IN ANY CLAIM FOR DAMAGES, FILED DURING THE TERM OF THIS POLICY, BASED ON PROFESSIONAL SERVICES RENDERED OR WHICH SHOULD HAVE BEEN RENDERED AFTER THE RETROACTIVE DATE, BY THE INSURED OR ANY OTHER PERSON FOR WHOSE ACTS OR OMISSIONS THE INSURED IS LEGALLY RESPONSIBLE, IN THE PRACTICE OF THE INSURED'S PROFESSION AS HEREINAFTER LIMITED AND DEFINED.
IF REPORTED TO THE COMPANY, THE FOLLOWING SHALL BE DEEMED TO BE A CLAIM FILED DURING THE TERM SO THIS POLICY:
a) the receipt, by the Insured, of a notice of legal action for damages as described above, or
b) the receipt, by the Insured, of a notification of an intention to hold the Insured responsible for damages as described above.
In Anderson v. Ichinose, 1998-2157 (La.9/8/99), 760 So.2d 302, the Louisiana Supreme Court quoted the following material *809 distinguishing "claims made" from occurrence policies:
With the development of a more complex society, it became more reasonable, particularly with respect to the activities of professionals, to insure against the making of claims, rather than the happening of occurrences, and "claims made" insurance developed to meet a need for professionals to insure against the making of a claim as the insured event, rather than having to struggle with traditional concepts and difficulties inherent in determining whether the "event" insured against was the commission of an act, error or omission or the date of discovery thereof or the date of injury caused thereby.
The major distinction between the "occurrence" policy and the "claims made" policy constitutes the difference between the peril insured. In the "occurrence" policy, the peril insured is the "occurrence" itself. Once the "occurrence" takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the "claims made" policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place.
Therefore, under a "claims made" policy, such as the one at issue here, the making of a claim is the event insured rather than the occurrence giving rise to the claim. The purpose of the claims made and reported requirement of the policy in the Anderson case was observed to be to alleviate problems in determining when a claim is made or whether an insured should have known a claim is going to be made. A "claims made" policy works perfectly as long as the insured who is covered under the retroactive date requirement continues to purchase successive policies from the same insurer. Problems sometimes arise, however, when the insured changes insurers or when the insured, for whatever reason, does not renew the policy and does not obtain extended coverage. See Anderson v. Ichinose, supra.
In the Anderson case, a physician allegedly misdiagnosed a mole biopsy from the plaintiff's toe as being noncancerous in October 1986, but recommended removal of the mole because of its potential to develop into a cancerous condition. The plaintiff delayed removal until the mole became painful due to trauma to the toe. The mole was removed in December 1987 and sent to Dr. Ichinose, who reported that the mole was cancerous. Several weeks later, the plaintiff had his toe amputated. Reexamination of the October 1986 biopsy revealed the misdiagnosis. In November 1988, the plaintiff filed suit against the doctor. The doctor's insurer was added in May 1995. The insurer claimed that it issued a "claims made" policy to the doctor covering the period from October 1, 1986, to October 1, 1987. Because the claim was made after the expiration of the policy period, the insurer asserted that there was no coverage.
In finding that there was no insurance coverage for this claim, the Anderson court stated that, unless there is a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume. The court found in Anderson that the application of the requirements of the "claims made" policy, under the facts of that case, did not violate public policy. The Anderson case did not discuss the applicability of La. R.S. 22:629.
The holding in Anderson was based, in part, on Livingston Parish School Board v. Fireman's Fund American Insurance *810 Company, 282 So.2d 478 (La.1973). In that case, the school board sued an engineer when the roof of a building collapsed on July 14, 1969. The engineer filed a third party claim against his insurer. The insurer had issued a "claims made" policy with a termination date of July 11, 1969. The supreme court determined that "claims made" policies were not against public policy. Summary judgment dismissing the claims against the insurer was found to be proper.
In Anderson, the supreme court observed that in the 26 years since the Livingston Parish School Board case was decided, the trend nationwide has been generally to uphold "claims made" policies. The court noted that, as a result, insurers have further refined such policies, and the use of that type of coverage in certain settings, especially those in which "long tail liability" is presented, has become commonplace.
Other courts in this state have considered the question of whether "claims made" policies conflict with the provisions of La. R.S. 22:629. Under some circumstances, those courts have found a conflict and have enforced coverage. In Hedgepeth v. Guerin, 96-1044 (La.App. 1st Cir.3/27/97), 691 So.2d 1355, writ denied, 97-1377 (La.9/26/97), 701 So.2d 983, a podiatrist had a "claims made" policy effective from October 2, 1985, until November 10, 1985. On October 2, 1985, within the policy period, the podiatrist treated the diabetic plaintiff's foot which resulted in an infection and partial amputation. A medical malpractice claim was filed July 23, 1986, against the podiatrist and his insurer. The insurer filed a motion for summary judgment asserting that it was not informed of the claim within the policy period and therefore there was no coverage.
The first circuit found that, by limiting the occurrence and reporting time to the policy period, the plaintiff had less than one year from the date of the malpractice to file suit. Finding that this scenario violated the provisions of La. R.S. 22:629, the first circuit ruled that the policy provision was without effect. This reasoning has been followed by the first circuit in Bennett v. Krupkin, 1999-2702 (La.App. 1st Cir.12/22/00), 779 So.2d 923, writ denied, XXXX-XXXX (La.3/30/01), 788 So.2d 1190; LeBlanc v. Succession of Raggio, 2000-2407 (La.App. 1st Cir.2/20/02), 818 So.2d 140, writ denied, XXXX-XXXX (La.5/31/02), 817 So.2d 95, and Hood v. Cotter XXXX-XXXX (La.App. 1st Cir. 12/28/07), ___ So.2d ___, 2007 WL 4554253.
The third circuit has also followed this reasoning in Gary v. Witherspoon, XXXX-XXXX (La.App. 3d Cir.6/2/99), 743 So.2d 708. See and compare Case v. Louisiana Medical Mutual Insurance Company, 624 So.2d 1285 (La.App. 3d Cir.1993), which excluded coverage for alleged malpractice which occurred during the coverage period but no claim was made until after the policy period. The applicability of La. R.S. 22:629 was not discussed. See also Robicheaux v. Adly, XXXX-XXXX (La.App. 3d Cir.1/31/01), 779 So.2d 1048; Regions Bank v. Kountz, XXXX-XXXX (La.App. 3d Cir.5/31/06), 931 So.2d 506; and Marsh Engineering, Inc. v. Parker, XXXX-XXXX (La.App. 3d Cir.2/7/07), 951 So.2d 492, writ denied, XXXX-XXXX (La.4/20/07), 954 So.2d 168, in which claims were made several years after the act giving rise to the claim.
This court considered the exact claims made by the plaintiff in the present case in Burns v. CLD, Inc., 38,998 (La.App. 2d Cir.10/27/04), 886 So.2d 607, writ denied, 2004-2906 (La.2/18/05), 896 So.2d 31. In Burns, alleged malpractice was committed by the staff of a nursing home on December *811 24, 2001. The patient died as a result of the alleged malpractice on January 11, 2002. A medical malpractice complaint was filed with the PCF on September 17, 2002. A wrongful death and survival action was filed on December 18, 2002. A "claims made" policy was in effect from December 31, 2000, until December 31, 2001. The insurer obtained summary judgment on the basis that there was no insurance coverage because no claim was made during the policy period.
The nursing home in Burns appealed, arguing that the "claims made" policy, requiring suit to be filed within the policy period, limits the prescriptive period for filing suit for damages arising from the alleged malpractice to less than one year, in contravention of La. R.S. 22:629. This court expressly rejected the reasoning of Hedgepeth, Bennett, and Gary. Based upon Anderson v. Ichinose, supra, we found that "claims made" policies are not violative of public policy and do not conflict with the provisions of La. R.S. 22:629.[2]
The facts of the present case are very similar to those in Burns. As in Burns, the plaintiffs allege both a survival action and a wrongful death action arising from alleged malpractice. The survival action accrues simultaneously with the tort, permits recovery only for damages suffered by the victim from the time of the injury to the moment of death, and is transmitted to the victim's beneficiaries upon his death. Burns v. CLD, Inc., supra. The wrongful death action accrues when the victim dies. It compensates the beneficiaries for their own individual injuries that occur at the moment of the victim's death and thereafter. When the two events occurred in this case giving rise to the causes of action against the doctor, there was no insurance coverage under the MPC policy definition of risk. The survival and the wrongful death actions would only be covered by a "claims made" insurance policy if a claim is made within the policy period. In this case, no such claims were made within the policy period.
Based upon our reasoning in Burns, we find that the trial court did not err in granting summary judgment in favor of the MPC. "Claims made" policies, such as the one at issue here, do not limit the time in which a plaintiff has to file suit following an alleged act of malpractice. Rather, the policy contractually limits the risk insured. The policy simply sets forth the parameters of the contractual agreement between the insured and the insurer. The plaintiff may file within the time limits set forth under the law. However, under the provisions of a "claims made" policy, if the claim is not brought within the policy period, the claim will not be covered. Such is the result in the present case. There was no limitation on the time period set forth by statute in which the claim was required to be filed against Dr. Taylor. There was simply a limit on the insurance coverage for the claim. The trial court did not err in granting summary judgment in favor of the MPC.

CONCLUSION
For the reasons stated above, we affirm the decision of the trial court granting summary judgment in favor of the Medical Protective Company, dismissing all claims brought against it by the plaintiffs in this matter. Costs in this court are assessed to the plaintiffs.
AFFIRMED.
NOTES
[1] La. R.S. 22:629 provided in pertinent part:

A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state or any group health and accident policy insuring a resident of this state, regardless of where made or delivered shall contain any condition, stipulation, or agreement:
. . . .
(3) Limiting right of action against the insurer to a period of less than twelve months next after the inception of the loss when the claim arises under any insurance classified and defined in R.S. 22:6(10), (11), (12), and (13), or to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.
This statute was amended by Acts 2006, No. 739, § 1 and Acts 2007, No. 43, § 1. The amended provision, which is not applicable to this case, now provides in pertinent part:
B. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement limiting right of action against the insurer to a period of less than twenty-four months next after the inception of the loss when the claim is a first-party claim, as defined in R.S. 22:1210.92, and arises under any insurance classified and defined in R.S. 22:6(6), (7), (10), (11), (12), (13), and (15) or to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.
C. Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.
[2] See also Johnston v. Broussard, 41,477 (La. App. 2d Cir.9/20/06), 940 So.2d 79.